UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Crim. No. 08-10386-PBS |
| | ) |
| v. | ) Violations: |
| | ) 22 U.S.C. §§2778(b)(2) & 2778(c) |
| ZHEN ZHOU WU a/k/a ALEX WU, | ) 22 C.F.R. §§121.1, 123.1, & |
| YUFENG WEI a/k/a ANNIE WEI, | ) 127.1 - Unlawful Export of |
| BO LI a/k/a ERIC LEE, | ) Defense Articles; |
| CHITRON ELECTRONICS, INC., | ) 50 U.S.C. §1705 - Unlawful |
| and | ) Export of Commerce Controlled |
| CHITRON ELECTRONICS COMPANY | ) Goods; |
| LIMITED a/k/a CHI-CHUANG | ) 18 U.S.C. §371 - Conspiracy; |
| ELECTRONICS COMPANY LIMITED, | ) 18 U.S.C.§1001(a)(1) - |
| | ) Scheme to Falsify, Conceal, and |
| Defendants. | ) Cover Up Material Facts; |
| | ) 18 U.S.C. §2 - Aiding and |
| | ) Abetting; and |
| | ) 18 U.S.C. §981(a)(1)(C), |
| | ) 22 U.S.C. §401, 28 U.S.C. §2461, |
| | ) 19 U.S.C. §1595a(d) - |
| | ) Forfeiture. |

**FIRST SUPERSEDING INDICTMENT**

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

1.    Chitron Electronics Company Limited a/k/a Chi-Chuang

Electronics Company Limited ("CHITRON-SHENZHEN") is an

electronics distributor whose headquarters is located in

Shenzhen, China.  According to its website, CHITRON-SHENZHEN is

"one of the earliest and largest distributors of electronics

components in China."  CHITRON-SHENZHEN has four branch offices

located in China (three in Mainland China and the other in Hong

Kong) and one branch office located in the United States.  The

United States office does business under the name Chitron

1

Electronics, Inc. ("CHITRON-US") and is located at 102 Clematis Avenue, Suite 7, Waltham, Massachusetts.

2. On or about March 11, 1998, Defendant ZHEN ZHOU WU a/k/a ALEX WU ("ALEX WU"), a citizen and national of the People's Republic of China ("China"), incorporated the United States branch office of CHITRON-SHENZHEN as a Massachusetts corporation. Since that time, CHITRON-US has purchased millions of dollars worth of electronics components and commodities from U.S. manufacturers and distributors and exported them to its customers in China.

3. Defendant ALEX WU is the general manager and president of CHITRON-SHENZHEN. Since incorporating CHITRON-US, he also has supervised and controlled all aspects of CHITRON-US. He served as its president from in or about March 1998 through in or about December 2008.

4. Defendant YUFENG WEI a/k/a ANNIE WEI ("ANNIE WEI") has worked at CHITRON-US from at least 1999 until in or about December 2008. Beginning in or about 2001, ANNIE WEI became the CHITRON-US office manager and supervised the U.S. office while ALEX WU was in China. She served in this role until in or about October 2007 when defendant BO LI a/k/a ERIC LEE ("ERIC LEE") became the office manager of CHITRON-US. ANNIE WEI worked at CHITRON-US from in or about October 2007 until in or about December 2008 in the area of accounting and finance.

2

5. Prior to in or about February 2007, ERIC LEE, a citizen and national of China, worked for CHITRON-SHENZHEN as its manager for North America Purchasing. In that capacity, he oversaw the procurement of U.S. origin goods from the United States. In or about February 2007, ERIC LEE obtained a U.S. work visa to work at CHITRON-US. Upon arriving in the United States, he served as the assistant office manager of CHITRON-US. He held that position until in or about October 2007. ERIC LEE then served as the office manager of CHITRON-US from in or about October 2007 until in or about December 2008.

6. In or about November 2005, ALEX WU opened Chitron's branch office in Hong Kong. The office was set up to receive shipments of U.S. commodities from CHITRON-US and re-shipped the goods to CHITRON-SHENZHEN. Prior to opening the Hong Kong office, CHITRON-US, under the management and control of both ALEX WU and ANNIE WEI, used three Hong Kong companies to serve as its freight forwarders into Mainland China. These freight forwarders received shipments of U.S. origin commodities from CHITRON-US and re-shipped the vast majority of these commodities from Hong Kong to CHITRON-SHENZHEN.

## The Export of Defense Articles

7. The export from the United States of arms, munitions, weapons, equipment for military use and related components, and the technology to design, build and test such items ("defense

3

articles and defense services"), is strictly controlled and regulated under federal law.

8.     The Arms Export Control Act, Title 22, United States Code, Sections 2778, et seq., authorizes the President of the United States to control the import and export of defense articles and defense services in furtherance of world peace, national security, and the foreign policy of the United States and to establish and maintain a United States Munitions List for that purpose.  The President has delegated the authority to regulate the export of defense articles and defense services to the Secretary of State.

9.     The United States Munitions List is a catalog of designated defense articles and defense services, which are subject to export restrictions.  Included on the United States Munitions List are military electronics used in radar systems (including missile guidance systems), electronic combat equipment, and communication systems.  M/A-Com power amplifiers bearing part numbers MAAPGM0034 and MAAPGM0038 provide broadband signal amplification with primary applications in phased array radars, point-to-point radio systems, high-speed transmission lines using fiber optics, and airborne radar.

10.    Any person who intends to export from the United States any article or service on the United States Munitions List is first required to obtain a license from the U.S. Department of

4

State.

11.   Since in or about 1990, the U.S. government has
maintained an Arms Embargo against China that prohibits the
export, re-export, or re-transfer of any defense article to
China. Beginning in February 1990, the U.S. Congress has
prohibited the export of defense articles, technical data, and
services to China.  In October 1998, for reasons of national
security, Congress expanded the arms embargo against China to
include satellite technology, which was at that time added to the
United States Munitions List.  Thus, since 1990, it has been the
policy of the United States and the U.S. Department of State to
deny license applications and any other written requests or
approvals for the export, re-export, or retransfer of defense
articles destined for China.

12.   At all times material to the Superseding Indictment,
the M/A-Com power amplifiers bearing part numbers MAAPGM0034 and
MAAPGM0038 were defense articles on the United States Munitions
List, which required a license from the United States Department
of State prior to being exported from the United States.

13.   No agent from CHITRON-US ever applied for a license
from the Department of State to export defense articles to Hong
Kong or China.  Nor did any agent from CHITRON-SHENZHEN.

### The Export of Commerce Controlled Goods

14.   In general, except for items exclusively controlled for

5

export and re-export by the Department of State, all items made, wholly or in part, in the United States, wherever located, are subject to the Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730-774. The Department of Commerce promulgates the Export Administration Regulations and maintains the Commodity Control List, which specifies the goods and technologies that require export licenses prior to shipment outside of the United States.

15. The Export Administration Regulations place limitations on the export of those goods and technology that the Secretary of Commerce deems could make a significant contribution to the military potential of other countries, could prove detrimental to the national security of the United States, or are contrary to the foreign policy of the United States. For instance, the Export Administration Regulations control exports and re-exports of "dual-use items," that is, commercial items that also have a military application, to foreign countries. With limited exceptions, the Export Administration Regulations prohibit any person from exporting or causing the exportation from the United States of dual use items designated as Export Commodity Classification Number 3A001, which are controlled for anti-terrorism and national security reasons, to China, without having first obtained an export license from the U.S. Department of Commerce.

6

16. Intersil product bearing part number CA3338AD is a Digital to Analog Converter and has applications in radar systems, electronic warfare, and telecommunications systems. At all times material to the Superseding Indictment, the Department of Commerce required a license for the export of Intersil Digital to Analog Converters, Model Number CA3338AD, to China for anti-terrorism and national security reasons. There were no applicable license exceptions for export of this item to China.

17. No agent from CHITRON-US ever applied for a license from the Department of Commerce to export the Intersil Converters, Model Number CA3338AD, to China. Nor did any agent from CHITRON-SHENZHEN.

## CHITRON-US' Shipping Records

18. From on or about January 1, 2003 through on or about December 2, 2008, CHITRON-US caused its agents, U.S. freight forwarders, primarily the United Parcel Service, to file 663 Shipper's Export Declarations ("SEDs") with the U.S. Department of Commerce. An SED is required to be filed for all exports of any commodity valued at or above $2500, or for which an export license is required for the shipment outside the United States to the final destination.

19. The vast majority -- more than 90% -- of the SEDs filed on behalf of CHITRON-US falsely listed a foreign freight forwarder (be it a Hong Kong company hired for that purpose or

7

Chitron's Hong Kong office) as the ultimate consignee, *i.e.*, the final end-user.

**COUNT ONE:**     **(22 U.S.C. §§2778(b)(2) and 2778(c), 22 C.F.R. §§ 121.1, 123.1, and 127.1(a)(1), and 18 U.S.C. §2 - Unlawful Export of Defense Articles)**

The Grand Jury charges that:

The allegations contained in paragraphs 1-19 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From on or about April 23, 2004 through on or about May 20, 2004, in the District of Massachusetts and elsewhere, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,
YUFENG WEI a/k/a ANNIE WEI,
CHITRON ELECTRONICS, INC., and
CHITRON ELECTRONICS COMPANY LIMITED a/k/a
CHI-CHUANG ELECTRONICS COMPANY LIMITED,**

did knowingly and willfully export, and cause the export from the United States to Hong Kong, and China, of, defense articles, to wit, 3 M/A-Com Power Amplifiers, bearing part number MAAPGM0038, without the required license or written authorization from the Department of State having first been obtained for such exports.

In violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a)(1), and Title 18, United States Code, Section 2.

9

**COUNT TWO:**   **(22 U.S.C. §§2778(b)(2) and 2778(c), 22 C.F.R. §§ 121.1, 123.1, and 127.1(a)(1), and 18 U.S.C. §2 - Unlawful Export of Defense Articles)**

The Grand Jury charges that:

The allegations contained in paragraphs 1-19 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From on or about April 23, 2004 through on or about May 20, 2004, in the District of Massachusetts and elsewhere, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,
YUFENG WEI a/k/a ANNIE WEI,
CHITRON ELECTRONICS, INC., and
CHITRON ELECTRONICS COMPANY LIMITED a/k/a
CHI-CHUANG ELECTRONICS COMPANY LIMITED,**

did knowingly and willfully export, and cause the export from the United States to Hong Kong, and China, of, defense articles, to wit, 5 M/A-Com Power Amplifiers, bearing part number MAAPGM0034, without the required license or written authorization from the Department of State having first been obtained for such exports.

In violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a)(1), and Title 18, United States Code, Section 2.

10

**COUNT THREE:** **(50 U.S.C. §1705, 15 C.F.R. §§736.2(b)(1), 736.2(b)(10), 764.2, and 764.3(b)(2)(i), Executive Order 13222, and 18 U.S.C. §2 - Unlawful Export of Commerce Controlled Goods)**

The Grand Jury charges that:

The allegations contained in paragraphs 1-19 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From on or about May 7, 2004 through on or about May 18, 2004, in the District of Massachusetts and elsewhere, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,
YUFENG WEI a/k/a ANNIE WEI,
CHITRON ELECTRONICS, INC., and
CHITRON ELECTRONICS COMPANY LIMITED a/k/a
CHI-CHUANG ELECTRONICS COMPANY LIMITED,**

did knowingly and willfully export, and cause the export, from the United States to China of 60 Intersil Digital to Analog Converters, Model number CA3338AD, without having first obtained an export license from the Department of Commerce, and with knowledge that said Converters were destined for China, a controlled country (a country to which exports of items are controlled for national security reasons).

In violation of Title 50, United States Code, Section 1705, Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 736.2(b)(10), 764.2, and 764.3(b)(2)(i), Executive Order 13222, and Title 18, United States Code, Section 2.

11

**COUNT FOUR:** **(18 U.S.C. §371 - Conspiracy)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-19 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From a date unknown to the Grand Jury, but at least from in or before December 2004, and continuing thereafter until on or about December 5, 2008, in the District of Massachusetts and elsewhere,

### ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, and BO LI a/k/a ERIC LEE,

defendants herein, did willfully conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly and willfully cause false and misleading Shipper's Export Declarations to be prepared, submitted, and filed with the U.S. Department of Commerce in violation of the International Emergency Economic Powers Act, 50 U.S.C. §1705, Executive Order 13222, and 15 C.F.R. §764.2(g)(1)(ii) (the Export Administration Regulations).

#### MANNER AND MEANS

The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following during the dates of the alleged conspiracy:

12

1. It was part of the conspiracy for the defendants to procure U.S. origin commodities using Chitron Electronics, Inc., located in Waltham, Massachusetts. Upon receipt of the U.S. origin commodities, the defendants then caused those commodities to be shipped to the People's Republic of China through Hong Kong.

2. It was further part of the conspiracy that the defendants signed, caused the signing, approved, and caused the filing of false Shipper's Export Declarations, which misrepresented and concealed the identity of the ultimate consignee and country of ultimate destination.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and other co-conspirators, committed overt acts, including but not limited to the following:

3. On numerous occasions, from in or about December 2004 through in or about October 2006, ANNIE WEI gave instructions to employees of CHITRON-US to ship commodities to companies hired as freight forwarders in Hong Kong.

4. On numerous occasions, from on or before December 2004 through in or about December 2005, ANNIE WEI instructed agents of United Parcel Service to sign and file false and misleading Shipper's Export Declarations with the U.S. Department of Commerce.

5.  Beginning in or about December 2005, ANNIE WEI instructed at
    least one employee to falsely complete SEDs on behalf of
    CHITRON-US.  She instructed this employee to identify Hong
    Kong companies and Chitron's Hong Kong office as the
    "ultimate consignee" on the SEDs when they were not in fact,
    nor did she at anytime material to this indictment consider
    them to be, the foreign party that was receiving the
    merchandise for the designated end-use.  ANNIE WEI also
    instructed this employee to list the country of ultimate
    destination as Hong Kong when in fact the vast majority of
    CHITRON-US' customers were located in Mainland China.

6.  In or about November 2005, ALEX WU opened Chitron's Hong
    Kong branch office for logistic reasons.  He set it up to
    act as a freight forwarder and receive shipments from
    CHITRON-US and re-ship the electronic components and other
    commodities to CHITRON-SHENZHEN.

7.  In or about February 2006, ANNIE WEI signed false and
    misleading Shipper's Export Declarations.

8.  On or about March 30, 2007, ANNIE WEI signed false and
    misleading Shipper's Export Declarations.

9.  On numerous occasions, from in or about December 2004
    through in or about October 2007, ANNIE WEI prepared
    shipping invoices, which were provided to the United Parcel
    Service, that indicated that the commodities being shipped

by CHITRON-US did not require a license when in fact many of those shipments contained items subject to U.S. Department of Commerce controls and required a license to export to China.

10. From in or about March 2007 through December 2008, ERIC LEE signed, caused to be signed, caused to be filed, and approved the filing of, more than 100 SEDs that were false in that they misrepresented and concealed the identity of the ultimate consignee from the U.S. Department of Commerce.

All in violation of 18 U.S.C. §371 and §2.

**COUNT FIVE:**  **(18 U.S.C. §1001(a)(1) - Scheme to Falsify, Conceal, and Cover Up Material Facts; Aiding and Abetting, 18 U.S.C. §2)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-19 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From in or before December 2004 and continuing until on or about December 5, 2008, in the District of Massachusetts and elsewhere,

**ZHEN ZHOU WU a/k/a ALEX WU, and
YUFENG WEI a/k/a ANNIE WEI,**

defendants herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully falsify, conceal, and cover up by trick, scheme and device material facts from the U.S. Department of Commerce, which they had a duty to disclose, to wit: said defendants each signed, caused to be signed, approved, and caused to be filed, Shipper's Export Declarations that misrepresented and concealed the identities of the ultimate consignees and final end-users to which Chitron Electronics, Inc., had shipped commodities.

All in violation of 18 U.S.C. §1001(a)(1) and §2.

16

COUNT SIX:      (18 U.S.C. §1001(a)(1) - Scheme to Falsify,
                Conceal, and Cover Up Material Facts; Aiding and
                Abetting, 18 U.S.C. §2)

The Grand Jury charges that:

The allegations contained in paragraphs 1-19 are hereby re-
alleged and incorporated by reference as if fully set forth
herein.

From on or about March 25, 2007 and continuing until on or
about December 5, 2008, in the District of Massachusetts and
elsewhere,

## BO LI a/k/a ERIC LEE,

defendant herein, in a matter within the jurisdiction of the
executive branch of the Government of the United States, did
knowingly and willfully falsify, conceal, and cover up by trick,
scheme and device material facts from the U.S. Department of
Commerce, which he had a duty to disclose, to wit: said defendant
signed, caused to be signed, approved, and caused to be filed,
Shipper's Export Declarations that misrepresented and concealed
the identities of the ultimate consignees and final end-users to
which Chitron Electronics, Inc., had shipped commodities.

All in violation of 18 U.S.C. §1001(a)(1) and §2.

## CRIMINAL FORFEITURE ALLEGATIONS
### 18 U.S.C. §981(a)(1)(C); 22 U.S.C. §401;
### 28 U.S.C. §2461; 19 U.S.C. §1595a(d)
### Criminal Forfeiture

1. Upon conviction of any offense alleged in Counts One and Two, the defendants,

### ZHEN ZHOU WU a/k/a ALEX WU,
### YUFENG WEI a/k/a ANNIE WEI,
### CHITRON ELECTRONICS, INC., and
### CHITRON ELECTRONICS COMPANY LIMITED,

shall forfeit to the United States:

- a. any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c);

- b. any arms, munitions of war or other articles exported or intended to be exported or removed from the United States in violation of law, and any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such arms or munitions of war or other articles, pursuant to 22 U.S.C. §401 and 28 U.S.C. §2461(c); and

- c. all merchandise exported or sent from the United States contrary to law, or the proceeds of value thereof, and property used to facilitate the exporting or sending of such merchandise, or the

18

receipt, purchase, transportation, concealment, or

sale of such merchandise, pursuant to 19 U.S.C.

§1595a(d).

2. Upon conviction of any offense alleged in Counts Three and Four, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,**
**YUFENG WEI a/k/a ANNIE WEI,**
**BO LI a/k/a ERIC LEE,**
**CHITRON ELECTRONICS, INC., and**
**CHITRON ELECTRONICS COMPANY LIMITED,**

shall forfeit to the United States:

a.   any property, real or personal, that constitutes,

or is derived from, proceeds traceable to the

commission of the offense, pursuant to 18 U.S.C.

§981(a)(1)(C) and 28 U.S.C. §2461(c); and

b.   all merchandise exported or sent from the United

States contrary to law, or the proceeds of value

thereof, and property used to facilitate the

exporting or sending of such merchandise, or the

receipt, purchase, transportation, concealment, or

sale of such merchandise, pursuant to 19 U.S.C.

§1595a(d).

19

3. If any of the forfeitable property described in paragraphs 1 through 2 above, as a result of any act or omission of the defendants:

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred or sold to, or deposited with, a third party;
>
> c. has been placed beyond the jurisdiction of the Court;
>
> d. has been substantially diminished in value; or
>
> e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in subparagraphs (a) through (e) of this paragraph.

All pursuant to Title 18, United States Code, Section 981, Title 22, United States Code, Section 401, Title 28, United States Code, Section 2461, and Title 19, United States Code, Section 1595a.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

B. STEPHANIE SIEGMANN
JOHN CAPIN
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS, Boston, MA          April 16, 2009

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk

21