```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,          )
                                   )
                 Plaintiff         )
                                   )
          -VS-                     )  CR. No. 08-10386-PBS
                                   )  Pages 1 - 24
CHITRON ELECTRONICS, INC., et al   )
                                   )
                 Defendants        )



                  SCHEDULING CONFERENCE

          BEFORE THE HONORABLE PATTI B. SARIS
               UNITED STATES DISTRICT JUDGE
```

```
                        United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts
                        August 24, 2009, 3:15 p.m.
```

```
                   LEE A. MARZILLI
                OFFICIAL COURT REPORTER
              United States District Court
              1 Courthouse Way, Room 3205
                  Boston, MA  02210
                    (617)345-6787
```

1    A P P E A R A N C E S:

2

3         JOHN A. CAPIN, ESQ., Assistant United States Attorney,
     Office of the United States Attorney, 1 Courthouse Way,
     Boston, Massachuetts, 02210, for the Plaintiff.

4

5         DONALD K. STERN, ESQ., Cooley Godward Kronish, LLP,
     Prudential Tower, 46th Floor, 800 Boylston Street, Boston,
     Massachusetts, 02199, for the Defendant Zhen Zhou Wu a/k/a

6    Alex Wu.

7         WILLIAM J. CINTOLO, ESQ., Cosgrove, Eisenberg & Kiley,
     P.C., One International Place, Suite 1820, Boston,

8    Massachusetts, 02110, for the Defendant Yufeng Wei, also
     known as Annie Wei.

9

10        GEORGE C. McMAHON, ESQ., Law Offices of George C.
     McMahon, 308 Victory Road, Marina Bay, North Quincy,
     Massachusetts, 02171, for the Defendant Bo Li, also known as

11   Eric Lee.

12        H. REED WITHERBY, ESQ., GARRICK COLE, ESQ., and
     THOMAS D. HERMAN, ESQ., Smith & Duggan, LLP,

13   Two Center Plaza, Boston, Massachusetts, 02108-1906, for the
     Defendant Shenzhen Chitron Electronics Company Limited.

14

15        PAUL W. JOHNSON, ESQ., Paul W. Johnson, Attorney at Law,
     Two Center Plaza, Suite 510, Boston, Massachusetts, 02108,
     for the Defendant Chitron Electronics, Inc.

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE CLERK:  The case of the United States V.

3    Chitron Electronics Company Limited, Criminal Action

4    No. 08-10836, will now be heard before this Court.  Will

5    counsel please identify themselves for the record.

6            MR. CAPIN:  Your Honor, good afternoon.  John

7    Capin on behalf of the government.

8            MR. WITHERBY:  And I'm Reed Witherby, and I'm

9    appearing for Shenzchen Chitron Electronics Company Limited

10   under a special penance.

11           MR. COLE:  And my name is Garrett Cole, your

12   Honor.  I'm with Mr. Witherby.

13           MR. STERN:  Good afternoon, your Honor.  Donald

14   Stern.  I'm here for the defendant Wu.

15           MR. JOHNSON:  Good afternoon, your Honor.  Paul

16   Johnson representing Chitron Electronics, Inc., which is a

17   Massachusetts corporation.

18           MR. HERMAN:  Good afternoon, your Honor.  My name

19   is Tom Herman, and I'm representing defendant Shenzhen

20   Chitron Electronics Company Limited.

21           THE COURT:  So who's filed the motion to dismiss?

22           MR. WITHERBY:  I have, your Honor.

23           THE COURT:  So I don't know why the rest of you

24   are here.  So I don't know if you all want to be here.  You

25   haven't all filed something, right, the rest of you?

1          MR. STERN:  No.

2          THE COURT:  So why don't you give me a sense of

3     what the case is about, when is it going to go to trial.

4     Apart from this one issue, it's a big case.

5          MR. CAPIN:  It is a big case, your Honor, and it's

6     getting bigger.  We're still before Judge Collings.

7          THE COURT:  When was it filed?

8          MR. CAPIN:  The original indictment was filed in,

9     I believe, at the very end of December, 2008.  A superseding

10    indictment was filed on April 16, the first superseding on

11    April 16, 2009.  We've had a series of additional

12    conferences before Judge Collings.  Hundreds of thousands of

13    pages of documents, both electronically and in hard copy,

14    have been provided.  As all the defendants know, it is the

15    government's intention to file a further superseding

16    indictment.  Our best expectation at this point, and some of

17    this depends on approval from Washington, is sometime in the

18    next couple of weeks, I would say two full weeks at most,

19    more likely in the next two, three weeks.  The case pending

20    currently involves allegations that three individuals, an

21    American corporation that goes by the name of Chitron and a

22    Chinese corporation that goes by the name of Chitron in

23    America -- I'm shorthanding this for ease --

24         THE COURT:  Chitron, what did you just say,

25    Chitron?

1            MR. CAPIN:  Well, the corporations are Chitron

2     Electronics, Inc., which is a U.S. company, and Chitron

3     Electronics Company Limited, also known as Chi-Chuang --

4     that's C-h-i-C-h-u-a-n-g -- Electronics Company Limited,

5     which are both names for a company headquartered in Shenzhen

6     Mainland China.  The indictment currently charges three

7     individuals, Mr. Alex Wu, Ms. Annie Wei, and Mr. Eric Lee,

8     with violating both the Export Control Act --

9            THE COURT:  Wu is in jail, right?

10            MR. CAPIN:  Wu is being held, as is Mr. Lee.

11            THE COURT:  And Lee is in jail.  And where's Wei?

12            MR. CAPIN:  Wei is released on conditions, your

13     Honor.

14            MR. CINTOLO:  She's released.  She's out.

15            THE COURT:  Is she American?  Is she a citizen

16     here?

17            MR. CINTOLO:  No.

18            THE COURT:  So she's here in this country?

19            MR. CINTOLO:  Correct.  She's here in this country

20     legally.

21            THE COURT:  Okay.

22            MR. CAPIN:  So in very summary fashion, the

23     indictment charges the illegal export of both defense

24     articles and articles that are controlled by the Commerce

25     Department, which maybe have a commercial or a military use.

1   It also charges the individuals with making false statements

2   and conspiring to make false statements.  And as we have

3   discussed in open court, so I'm not revealing anything, a

4   number of times, the next superseding indictment will have

5   similar charges but a much greater volume, and we --

6           THE COURT:  The same people or new people?

7           MR. CAPIN:  The government anticipates adding no

8   new defendants, so basically who's in the case now is who,

9   from the government's perspective, will be in the case at

10  trial.

11          THE COURT:  So it's just additional charges?

12          MR. CAPIN:  Just additional charges, correct.

13          THE COURT:  And is it -- I mean, I don't know if

14  this is public or not, so stop me, what is and what isn't,

15  but is it stuff they already know about and you're just

16  adding it to the indictment, or is it something that will

17  extend the time to trial, new stuff?  I'm talking only in

18  terms of scheduling a trial.  Is it going to be a whole new

19  raft of information?

20          MR. CAPIN:  There will be some new information,

21  very little new information.  The lion's share -- and by the

22  lion's share, I mean something on the order of 99 percent or

23  more -- of the documentation from which the evidence at

24  trial will be culled has been provided and was provided long

25  ago.

e6ff263c-752f-4fde-9b3d-93be493de16c

1           The complications of the case, and we've discussed

2   it -- again, this is nothing new -- in open court, are that

3   thousands of the documents are in Mandarin and have to be

4   translated.  Most of this evidence came in discovery --

5           THE COURT:  Have you translated it for them?

6           MR. CAPIN:  Yes.  Translations will be provided

7   pursuant to both the rules and any agreements between the

8   parties, and we've discussed that also --

9           THE COURT:  Are all these people only Chinese

10  speakers?

11          MR. CAPIN:  I believe -- I know Ms. Wei is

12  bilingual.

13          THE COURT:  So we'll need interpreters for the

14  trial?

15          MR. CINTOLO:  I don't anticipate it yet, but it

16  may at some point in time, depending on how complicated the

17  language gets.  But she understands as long as it goes

18  slowly.  If it goes too fast, she has trouble.

19          THE COURT:  So at least theoretically we have

20  three individuals who might need three interpreters?

21          MR. CINTOLO:  Correct.

22          THE COURT:  Any witnesses who only speak Chinese

23  or no?

24          MR. CAPIN:  I don't expect that will be the case,

25  your Honor.

1       THE COURT:  When are you going to get them the

2  rest of the documents in English?

3       MR. CAPIN:  Well, they have the documents.  What

4  they're waiting for is the superseding indictment.  And

5  there have been a number of hurdles to get over, including

6  the translation of certain Mandarin documents and the

7  identification of exports that violated U.S. law among the

8  literally thousands and thousands of exports that were

9  exported by these companies, entities and these individuals

10 over the ten or so year period that the conspiracy spans.

11 So there really is very little more forthcoming.

12      THE COURT:  How long a trial is it?

13      MR. CAPIN:  I would imagine it would be at least a

14 two- to four-week trial.

15      THE COURT:  Okay.  And that's for the government's

16 case?

17      MR. CAPIN:  Well, that's my expectation.

18      THE COURT:  And so for the defense case, do you

19 have a sense?  I'm thinking we should set up a trial date

20 right now.  Any idea?

21      MR. STERN:  There's a certain degree of

22 frustration that we've all had from the defense side.  Your

23 Honor is going to hear a very substantive motion this

24 afternoon which deals with the Chinese company.  From the

25 defendants' point of view, particularly those who are in

1  custody, the two defendants in custody, we've been sort of

2  waiting for the superseding because there are any number of

3  legal issues, discovery issues; but it didn't really seem to

4  make sense to tee those up until we sort of knew what the

5  whole case was about.

6          THE COURT:  Well, with so many people, so many

7  lawyers, if I don't get a trial date now, I won't get

8  everyone in the room.  So I'm sort of hoping to get a sneak

9  preview, if you will, of the case, get a trial date, which

10  would maybe -- I'm assuming, if he says it's a month, and

11  that's for his case, with all these people cross-examining,

12  and you may not all have consistent interests -- maybe you

13  do, maybe you don't -- I've got to assume a two-month trial,

14  right?  Am I wrong?  Six weeks, two months?

15          MR. STERN:  I don't think you're wrong.

16          THE COURT:  That's even with me hurrying as I tend

17  to do, hurrying folks along, I think that's what we're

18  talking about, right?

19          MR. CAPIN:  I think that's realistic.

20          THE COURT:  And we have people in jail.  I just

21  think we need to sort of -- I know I'll hear your very

22  substantive motion in a minute -- like, get it going.  When

23  can you try the case?  When can you get the documents to

24  them and try the case?

25          MR. CAPIN:  I suspect we could try the case any

1   time this fall.

2          THE COURT:  When are you going to get them the

3   documents, all the rest?  Have you given them almost

4   everything in English other than the stuff that's

5   superseding?

6          MR. CAPIN:  We produced everything as we received

7   it.  The source of most of the documents the defendants

8   withheld, there were documents that were seized during a

9   number of searches, both of the local premises and of the

10  individual's residence.  There were also documents that were

11  seized on certain computers at those locations and from

12  defendant Wu's laptop computer and his telephone as he

13  entered the country in December.  That was when the arrest

14  occurred.

15         And part of why the government in a sense has been

16  behind the eight ball on this is because we had this flow of

17  information coming into our possession at the very end of

18  last year.  We're talking about 1.7 terabytes of data and

19  something on the order of 120,000 to 140,000 pages of hard

20  copy, so there's very little the defendants don't have.

21         THE COURT:  Wait, wait.  It may be Mr. Wu knows

22  what it is, but maybe Ms. Wei doesn't.  I don't know enough

23  about the case.  I just need to know, have you at this point

24  turned over everything you need to with respect to the

25  second superseding indictment?

1          MR. CAPIN:  Absolutely.

2          THE COURT:  All right, so all that's coming is the

3    third wave -- I'm wrong -- first superseding with the second

4    superseding indictment?

5          MR. CAPIN:  Correct, and --

6          THE COURT:  And how much is left?

7          MR. CAPIN:  Very little, and I can't identify it

8    because the charges aren't finalized, but it will be on the

9    order of hundreds or thousands of pages as opposed to the

10   hundreds of thousands of pages that we've already produced,

11   so it will be very little information.

12         THE COURT:  Thousands of pages?

13         MR. CAPIN:  Well, I mean, I'm reticent to -- I'm

14   reluctant to cab myself to a number.  I'd be very surprised.

15         THE COURT:  Well, give me a date when that can

16   happen, assuming the indictment as you predict and the grand

17   jury does give additional charges.

18         MR. CAPIN:  Assuming the grand jury would return

19   an indictment by, let's say, the middle of September, I

20   would imagine within a week or two the defendants would have

21   all the documents that they would need to prepare their

22   case.  The government would be prepared to try the case at

23   just about any point thereafter.  I mean, obviously we'd

24   need -- you know, I suspect they would --

25         THE COURT:  Well, what do you all want?

1    MR. STERN:  Well, setting a trial date is a good

2  idea, your Honor, but here's the problem:  There's an

3  enormous number of documents, the 1.7 terabytes.  I don't

4  know how many documents.  It's just a lot of documents.  So

5  figuring out which of those the government thinks are

6  important, which of those are in the government's mind

7  evidence of criminal intent is -- we can't do that until

8  they identify what those documents are.

9    THE COURT:  That's a great idea.  But let's assume

10  for a minute I make them do that and they specify what

11  exhibits they would mark for trial.  So help me through

12  this.  So let's assume that there's somewhere between a

13  hundred and a thousand documents coming in in two weeks,

14  when do you want the trial?

15    MR. STERN:  Well, there's another part of the

16  documentation that we need, which were not documents that

17  were in the possession of any of the defendants or any of

18  the companies but are in the possession of the government,

19  the Commerce Department, the Defense Department; and that to

20  some extent, you know, is a preview really of --

21    THE COURT:  Well, sure, when I give you the trial

22  date, you'll start subpoenaing them, and you'll go through

23  those hoops you have to do.

24    MR. CAPIN:  Well, I think Mr. Stern may be

25  alluding to a different issue --

1          THE COURT:  What?

2          MR. CAPIN:  -- which hasn't been litigated yet

3     before Judge Collings, but the defendants have requested

4     certain documents; for example, documents underlying the

5     State Department's determination that some of these things

6     being exported are on what's called the U.S. Munitions List.

7     And those as a matter of statutes are not subject to

8     judicial review, and therefore in our view are not subject

9     to discovery.

10         THE COURT:  Well, fine, this is all the

11    back-and-forth, the ping-ponging, but I just need a trial

12    date.  So assuming for a minute, when can you file with

13    Judge Collings your motion?

14         MR. STERN:  Well, within a week or ten days after

15    we see the superseding.

16         THE COURT:  Can't you file it anyway essentially

17    because I'm assuming most of the documents you know about

18    now, right, because you've gotten most of it, right?

19         MR. STERN:  We've gotten -- well, there's only

20    been a handful of documents the government has identified as

21    relevant to the existing case.  We have exchanged discovery

22    letters on additional things that we say we need.

23         THE COURT:  So pick a date when you can all file

24    whatever your motion to compel is.  You view it as

25    exculpatory, is that it?

1          MR. STERN:  Yes, exactly, your Honor.

2          MR. WITHERBY:  What date from the superseding

3    indictment?

4          THE COURT:  I'm happy to do it that way.  Let's

5    say within two weeks of the issuance of the superseding

6    indictment?  I think it's actually the second superseding?

7          MR. CAPIN:  It will be the second superseding,

8    your Honor.

9          THE COURT:  So within two weeks.  And then you,

10   when can you -- I mean, it is a help to at least tentatively

11   mark for them the key exhibits you're going to rely on so

12   they can focus.

13         MR. CAPIN:  Agreed, and I think that is exactly

14   the rubric within which this should be viewed.  What they're

15   asking for is an exhibit list.

16         THE COURT:  When you do a million-document dump,

17   it just helps.  People focus on --

18         MR. CAPIN:  Well, I mean, it's not that

19   complicated because, for example, I think just based on

20   reading the second superseding indictment which

21   identifies --

22         THE COURT:  When can you tell them?  I understand.

23   When can you tell them what are the key documents you plan?

24   And I'm not holding you to it.  You can supplement.

25         MR. CAPIN:  I think the answer is that when they

1    see the second superseding indictment, it will identify

2    specific parts that were exported, and documents relating to

3    the export of those parts are already in their possession,

4    so --

5              THE COURT:  If there are a million documents, just

6    show it to them, especially if they're coming out of the

7    Chinese, and it's always complicated translating that stuff.

8    So maybe what you can do is for each of the -- just sit down

9    and confer and do little yellow stickies or something just

10   on the key things that they should look at.  And then,

11   they're good lawyers, they're not going to stick with that,

12   I'm assuming, they're going to go beyond it, but at least

13   what you're focusing on, and then they can advise their

14   clients.  And if you want to supplement, you can, because at

15   some point you're going to mark things as exhibits, right?

16   I'm setting a trial date today, and I'm going to set that

17   date.

18              MR. CAPIN:  That's correct.

19              THE COURT:  So assuming that you move to compel,

20   you oppose, Collings rules, maybe you object, it comes to

21   me, but, in any case, we're just going to move this forward.

22   When can we try this?  Do we want to try it all together?

23   Is there going to be a motion to sever?  Is everybody on the

24   same page?

25              MR. CAPIN:  The government is not going to move to

1   sever.

2            THE COURT:  What?

3            MR. CAPIN:  The government won't move to sever.

4            THE COURT:  I know that, although maybe.  I mean,

5   I've got some people in jail and some people not.  So, in

6   other words, one could argue -- and we'll get to this in a

7   minute -- that the mess of trying to pierce the corporate

8   veil, if that's what it boils down to, is not something that

9   we should bog this trial down with.

10           MR. CAPIN:  Well, at this point no defendant has

11  moved to sever.  Second --

12           THE COURT:  Is anyone planning to?  Do you know

13  yet?  No?  I guess not so far.

14           MR. CINTOLO:  On behalf of Ms. Wei, no, we're not

15  planning to sever.

16           THE COURT:  All right.

17           MR. CAPIN:  And, second, I think actually --

18           THE COURT:  So how many defendants?  One, two,

19  three, four, five defendants?

20           MR. McMAHON:  Your Honor, I represent the third

21  defendant, Bo Li, but we're not moving to sever.

22           THE COURT:  It's a huge trial, so there are

23  essentially five defendants in this case, potentially, maybe

24  four, but still a big trial.  So do you want to do December?

25  Is that too soon, too late?  November?  What do you want?

1        MR. STERN:  I think December would make some

2   sense.  I mean, we can try to shoot for November, but I

3   suspect it would end up getting pushed into December.

4        MR. CINTOLO:  I hate trying in December, your

5   Honor, with all the holidays.

6        THE COURT:  Well, it is true we have to jump over,

7   we'd have to leapfrog over Christmas.  I mean, so one

8   possibility is -- Robert, can we do early November and then

9   fit it in before Christmas or do it -- someone may have

10  already grabbed that right-after-Christmas slot, and I hate

11  to put it off and have people in jail into March.  Do we

12  have something the first week in November?

13       (Discussion off the record between the Court and

14  Clerk.)

15       THE COURT:  So we could do November 30 and then

16  leapfrog over Christmas, or we could do -- what do we have

17  right after Christmas?

18       THE CLERK:  Right after?  We have --

19       (Discussion off the record between the Court and

20  Clerk.)

21       THE COURT:  January 4?

22       MR. CAPIN:  It's certainly fine by the government,

23  your Honor.

24       THE COURT:  What do you want to do?  I mean,

25  really your client is in jail kind of thing.  Do you want to

e6ff263c-752f-4fde-9b3d-93be493de16c

1   start with an earlier date?

2          MR. STERN:  What was the other date, November 30?

3          MR. CINTOLO:  The choices are November 30 or

4   January 4?

5          THE COURT:  We can try and do it the end of

6   October too, if you want it earlier.  I'm just worried that,

7   truthfully, with all these documents and the motions, it's

8   just not realistic.  When do you want?  Your people are in

9   jail.  Pick a date.

10         MR. STERN:  I pick November 30, if that's the

11  choice you're saying between -- I think early October, it's

12  going to end up slipping, given the other things.  I just

13  don't think it's realistic.  Personally, I don't think it's

14  going to stick.  In October, I think that's probably --

15  given that the government is not going to supersede until

16  probably the middle of September.

17         THE COURT:  November 30?  And then if I need to --

18  I'm away, I'm out of the country, so let me just say this,

19  and we will not be sitting over Christmas week.  And you

20  can't get a jury that's willing to do that anyway, so the

21  assumption will be we'll get some slippage on either side of

22  Christmas week and then jump in again.

23         If you were betting people at this point, are at

24  least -- let me turn to you at this point -- are at least

25  some of them going to go to trial?

1    MR. CAPIN:  My guess is, yes, your Honor.

2    THE COURT:  So I'm going to count it as a real

3  trial.  I'm going to count on a four- to five-week trial

4  anyway.  Does that sound reasonable?  Any motion to

5  suppress, dispositive motions and the like?

6    MR. CINTOLO:  There will be, once the superseding

7  indictment comes down, your Honor.

8    THE COURT:  Like what?  A motion to suppress?

9    MR. CINTOLO:  No, no motion to suppress.  Motion

10  to dismiss.  There will be legal issues that I'm

11  anticipating will result --

12    THE COURT:  Like statute of limitations kind of

13  legal issues?

14    MR. CINTOLO:  No.  Your Honor, in light of -- I

15  don't know what it's going to say, and I don't want to play

16  my hand at this particular point in time, but I think there

17  will be some significant motions, a motion to dismiss.  I'm

18  not saying it will take forever to decide, but I will --

19    THE COURT:  I know nothing about the case yet.

20    MR. CINTOLO:  I understand.

21    THE COURT:  I'm soon to learn.  So when can you

22  file your motions to dismiss, within two weeks after the

23  indictment, superseding?

24    MR. CINTOLO:  Yes.

25    THE COURT:  Everybody will file within two weeks

1   after the superseding, unless Judge Collings set some other

2   schedule I don't know about.

3            MR. CINTOLO:  If he has, I don't recall it, your

4   Honor.

5            THE COURT:  So is there anything else on a

6   preliminary basis that I should talk about until we get to

7   their motion to dismiss?

8            MR. CINTOLO:  Just as a matter of clarification,

9   because I heard your Honor, but did your Honor say that the

10  government or did the government agree that what they would

11  do is designate the documents, at least tell us what

12  documents?

13           THE COURT:  That's a good point to circle back to

14  that.  So when can you do that?

15           MR. CAPIN:  For a November 30 trial date, is that

16  what we're talking about?

17           THE COURT:  Yes.

18           MR. CAPIN:  I would say 30 days before trial,

19  which in any white collar case I've done, I've never

20  produced an exhibit list, which is what they're asking for,

21  sooner than two or three weeks before trial, so I think

22  30 days would be appropriate.

23           THE COURT:  Well, why don't I do this.

24           MR. CAPIN:  If your Honor would like, we will

25  gladly agree to confer, and we've invited individually

1    counsel to confer on --

2         THE COURT:  We're going to have you right now do a

3    pretrial order before you leave here today that's going to

4    back up to that date, so that you'll sign it, and we'll have

5    a pretrial hearing and all that sort of thing.  So I'm not

6    really talking about a formal exhibit list.  You're

7    absolutely right, 30 days beforehand would be fine.  I'm

8    talking about -- and I could just order it -- just going

9    through what are the key documents associated with the key

10   charges, so they've got everything, hopefully exculpatory

11   and the rest.  But, I mean, if we're really talking millions

12   of documents -- I know this has happened in other cases --

13   just simply helping them through the documents.

14        MR. CAPIN:  Well, as I said, the indictment will

15   identify the exports at issue and the items at issue, so I

16   think they can do it themselves; but if the Court is asking

17   the government to provide some guidance, within three weeks

18   of the issuance of the new indictment we can provide some

19   guidance as to which documents prove that on a certain date

20   a certain export went from X distributor to Waltham,

21   Massachusetts, and ultimately on to China.  So I guess I'm

22   saying three weeks after the superseding issues.

23        THE COURT:  So they'll sit down with you on an

24   informal basis, not to be bound but just essentially to walk

25   through to help you pore through what they view as, you

1    know, almost like in a civil document production where you

2    say, "This is in response to this document request, this is

3    to that," and you can all sit down, and they'll try to walk

4    you through it, not binding on them as an exhibit, but at

5    least a way for you to start to organize the millions of

6    documents that they're talking about.

7              MR. CINTOLO:  Can I add one more practical

8    question, your Honor?  I'm assuming, because of the document

9    intensity of this particular case, that they're probably

10   going to use some sort of presentation software for the

11   jury.  Can they tell us as quickly as they possibly can what

12   they're going to use so that we can coordinate that with

13   them so that we both use the same system, so that they're --

14             THE COURT:  I don't know enough about it.  Can you

15   tell them your software system?

16             MR. CAPIN:  Not by name, but absolutely I think we

17   can identify that.  Obviously we all have an interest in

18   making this as efficient for the jury and for the Court as

19   possible.

20             THE COURT:  And is it in Chinese?

21             MR. CINTOLO:  No.  It will be the summation or one

22   of those documents where, your Honor, that they call it up

23   and the jury gets to see it on the monitors, so that it's

24   not a paper case, it's an electronics case.  But in the last

25   case I tried just a couple weeks ago, the government didn't

1    identify it for us until, like, a week before trial, and it

2    was too late for us to get our stuff on the system, and it

3    just made it more difficult --

4              THE COURT:  Which one did you just try?

5              MR. CINTOLO:  Aggregate Industries.

6              THE COURT:  Before Judge Stearns?

7              MR. CINTOLO:  Yes.

8              THE COURT:  Did it work well for a big document

9    case?

10             MR. CINTOLO:  It works well.  It didn't work well

11   in that courtroom, your Honor, because they were not wired.

12   I did one before Judge Barbadoro in New Hampshire that

13   worked very well.  Using it totally electronic, it made it a

14   lot easier.  We were all on the same system, so anybody

15   could call up any document at any time.

16             THE COURT:  So we should work on that because I'm

17   pretty high-tech, but we just did a huge case, a civil case

18   involving witnesses from actually Hong Kong, Macau, Israel,

19   Canada, all over the country, and we did it through some

20   video conferencing.  Now, that was civil, not criminal, and

21   I understand there are some differences here, but it may be

22   that there could be some agreement on it.  Are there

23   international witnesses?  Do you have international

24   witnesses?

25             MR. CINTOLO:  Depending upon what the superseding

1    indictment is will determine whether or not we have them.

2         THE COURT:  I don't know if you're allowed to do

3    that under the confrontational clause, but I've done it.  I

4    remember I had a case a while ago where this Saudi Arabian

5    put a firecracker in his backpack and was suing somebody in

6    Riyadh.  I mean, it's not as good as having the person here,

7    but it's just something worth thinking about.

8         MR. CAPIN:  I've had good witnesses by video in

9    other trials.

10        THE COURT:  I think Judge Gertner's case, the

11   antitrust case, I think that was criminal, right?  And

12   didn't they have witnesses coming in from Tokyo or

13   something?

14        MR. CAPIN:  I think that might have been civil,

15   but I've done a criminal case in front of Judge Wolf where

16   we had a pregnant woman in D.C. who appeared, because she

17   couldn't travel, by video.  I think the defendants would

18   have to agree.

19        THE COURT:  Yes, I think you'll have to agree, but

20   it might help both sides.

21        MR. WITHERBY:  If that was the Nippon case, that

22   was a criminal case.

23        THE COURT:  It was criminal?  You did that?

24        MR. WITHERBY:  No, but I've reviewed it.

25        (End of Scheduling Hearing.)

1                   C E R T I F I C A T E

2

3

    UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )
5

6

7          I, Lee A. Marzilli, Official Federal Court

8   Reporter, do hereby certify that the foregoing transcript,

9   Pages 1 through 24 inclusive, was recorded by me

10  stenographically at the time and place aforesaid in Criminal

11  Action No. 08-10386-PBS, United States of America V. Chitron

12  Electronics Company Limited, et al, and thereafter by me

13  reduced to typewriting and is a true and accurate record of

14  the proceedings.

15          In witness whereof I have hereunto set my hand

16  this 9th day of September, 2009.

17

18

19

20

21          /s/ Lee A. Marzilli
            _____
22          LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER
23

24

25