UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES OF AMERICA      )
                              )
          v.                  )CRIM. ACTION NO. 08-10386-PBS
                              )
CHITRON ELECTRONICS COMPANY   )
LIMITED a/k/a CHI-CHUANG      )
ELECTRONICS COMPANY LIMITED,  )
          Defendants.         )
_____ )
```

**MEMORANDUM AND ORDER**

November 12, 2009

Saris, U.S.D.J.

Defendant Shenzhen Chitron Electronics Company Limited ("Chitron-China")[1] is charged with the allegedly illegal export of defense articles and technology controlled by the Department of Commerce from the United States to the People's Republic of China.[2]  Pursuant to Fed. R. Crim. P. 12, Chitron-China moves to dismiss all charges against it on the basis of insufficiency of service of process and lack of personal jurisdiction.  It also asserts that the service of process violates Article 8 of the

---

[1] Chitron-China is referred to as Chitron Electronics Company Limited a/k/a Chi-Chuang Electronics Company Limited in the Second Superseding Indictment.

[2] Chitron-China is charged with the unlawful export of defense articles in violation of 22 U.S.C. §§ 2778(b)(2), 2778(c) (Counts 2-7), conspiracy in violation of 18 U.S.C. § 371 (Count 1), unlawful export of commerce controlled goods in violation of 50 U.S.C. § 1705 and 18 U.S.C. § 2 (Counts 8-31), and money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts 35-37).

Agreement on Mutual Legal Assistance in Criminal Matters signed by both the United States and China.  After hearing and a review of the supplementary memoranda, the Defendant's Motion to Dismiss (Docket No. 56) is **DENIED**.

## I.  FACTUAL BACKGROUND

Both Chitron-China and the Government have submitted affidavits and exhibits on the issue of personal jurisdiction and service of the summons.  The Court will rely on the indictment along with these additional submissions, although many of the facts are disputed.  <u>See</u> Fed. R. Crim. P. 47(b) ("A motion may be supported by an affidavit.").

### 1.  <u>Chitron-China's Entry into the United States Market</u>

Chitron-China is an electronics distributor with headquarters in Shenzhen, China, where it employs about 200 workers.  (<u>See</u> Second Superseding Indictment ("SSI") ¶ 1.) Ranked among the top ten Chinese electronics distributors, it has three branch offices in mainland China, one branch office in Hong Kong, and one in the United States. (<u>Id.</u> ¶ 2.)  The United States office is located in Waltham, Massachusetts.  (<u>Id.</u> ¶ 7.)

Chitron-China was founded by Defendant Zhen Zhou Wu in 1996. Later in 1996, Defendant Yufeng Wei (his former wife) entered into an agreement with Chitron-China to open its "purchasing office" in the United States.  According to this agreement, Wei agreed to procure electronics components for Chitron-China and

export them to its "shipping agent" located in Hong Kong.  (<u>Id.</u> ¶ 3.)  This office was initially registered as a sole proprietorship under the name "Perfect Science and Technology Company Limited."  In 1998, Wu incorporated the United States operation as a Massachusetts corporation, under the name "Chitron Electronics, Inc." ("Chitron-US").  (<u>Id.</u> ¶ 7.)  Chitron-China holds a majority interest in Chitron-US.  Wu is the majority shareholder of Chitron-China and owns approximately 35% of the shares of Chitron-US.  Wu has served as general manager and president of both companies.

Since 1998, Chitron-US has purchased millions of dollars worth of electronics components and commodities from United States manufacturers and distributors and exported them to Chitron-China.  (<u>Id.</u> ¶ 8.)

### 2.   <u>Chitron-China's Acquisition of Defense Articles</u>

Beginning in 1998, Chitron-US began ordering and shipping products, described in internal documents as "military" parts, from the United States to Chitron-China.  (SSI ¶ 11.)  By 2007, Chinese military-related institutions in the fields of electronics and aerospace comprised 25% of Chitron-China's customer base.  (<u>Id.</u>)  In fact, Chitron's website (a single site shared by both Chitron-China and Chitron-US) promoted Chitron's "specialty" as "its ability to procure military and industrial as well as hard to find and obsolete parts."  (<u>Id.</u> ¶ 12.)

The Arms Export Control Act authorizes the President to regulate the import and export of defense articles.  22 U.S.C. § 2778 <u>et seq.</u>  The promulgated regulations require any person intending to export certain enumerated defense articles from the United States to obtain a license from the Department of State. (SSI ¶ 20.)  No agent from Chitron-China or Chitron-US has ever applied for such a license.  (<u>Id.</u> ¶ 22.)

In the government's view, Chitron-US allegedly circumvented export laws by falsely listing foreign freight forwarders in Hong Kong (including Chitron-China's branch office in Hong Kong) as the "ultimate consignee" or end-user of the products being shipped and by causing shipping companies to file false Shipper's Export Declarations ("SEDs") with the United States Department of Commerce.  Chitron-US also caused Shipper's Export Declarations to be filed that falsely identified defense articles subject to export regulation as "electronic components" classified as "No License Required."  (<u>Id.</u> ¶¶ 36-37.)  The ultimate destination for all of Chitron-US's exports was either Chitron-China's headquarters in Shenzhen or another branch office in Mainland China.  (<u>Id.</u> ¶¶ 8, 33.)

### 3.   <u>Interrelationship Between Chitron-China and Chitron-US</u>

As mentioned, Wu was General Manager and President of both Chitron-China and Chitron-US at various times.  (<u>See</u> SSI ¶¶ 1, 7, 8; Affidavit of Special Agent Edward J. Hayden ("Hayden Aff.") ¶¶

-4-

11, 13.)  The indictment alleges that Chitron-China was integrally involved in the daily operations of Chitron-US, such that Chitron-US was a mere front for the Chinese company's business transactions.  Chitron-China controlled what work was being performed at Chitron-US each day by sending "tasking lists" from the Chitron's offices in China to the Waltham, Massachusetts office of Chitron-US.  These lists included "lists of parts that [Chitron-China's] customers were interested in procuring."  (SSI at 18; see also Hayden Aff. ¶ 19.)

As the company grew, Chitron-China's employees located in mainland China began to communicate directly with United States companies on a regular basis.  (SSI at 34-36.)  To facilitate this, Wu established an elaborate telephone system for Chitron-US using a toll-free number.  Calls to this toll-free number were forwarded to Chitron-China's offices in Shenzhen, China, where Chinese employees answered the calls.  (Hayden Aff. ¶ 20.)  The phone system also masked outgoing calls from the Shenzhen headquarters, such that it appeared that the call was being placed from the Chitron-US office.  (Id.)  In order to shield the fact that electronics sold to Chitron were intended for end-users in mainland China, Chitron-China employees stated to United States retailers and distributors that they were in fact employees of Chitron-US located in Massachusetts.  (SSI at 34-36; Hayden Aff. ¶ 20.)

The indictment also alleges that Chitron-China facilitated

-5-

its unlawful exports by paying for Chitron-US's operating costs through monetary transfers sent to the United States from China. (<u>Id.</u> at 56-58.)  These transfers also paid for the salaries of Chitron-US employees.  (Hayden Aff. ¶ 21.)

### 4.   <u>Procedural History</u>

The original indictment, handed down on December 18, 2008, only pertained to Defendants Zhen Zhou Wu, Yufeng Wei, and Bo Li. Chitron-China was indicted on April 16, 2009.  (<u>See</u> First Superseding Indictment (Docket No. 29).)  On June 3, 2009, Special Agent Joseph Sullivan of the United States Immigration and Customs Enforcement served a copy of the summons issued to Chitron-China on defendant Wu, as President of or, alternatively, an agent for Chitron-China.  Agent Sullivan personally served a copy of the summons on Wu, who was in custody at Donald C. Wyatt Federal Detention Center pending trial.  (Affidavit of Special Agent Joseph Sullivan ¶ 2, 4.)  In addition, at the Government's request, the clerk of this Court sent a copy of the summons by certified mail to the Chitron-US office in Waltham, Massachusetts.  The docket in this case indicates that the summons was delivered to Chitron-US on May 15, 2009.

The grand jury handed down a second superseding indictment against Chitron-China and other defendants on October 1, 2009.

### II.  DISCUSSION

### 1.  <u>Personal Jurisdiction over Chitron-China</u>

Chitron-China moves to dismiss the indictment against it, claiming that this Court lacks personal jurisdiction over the corporation.

One bedrock principle of personal jurisdiction over foreign corporations in the criminal context is the "effects" doctrine. In the domestic context, courts have long held that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power." Strassheim v. Daily, 221 U.S. 280, 285 (1911) (involving habeas corpus petition under domestic law); United States v. Steinberg, 62 F.2d 77, 78 (2d Cir. 1932) ("It has long been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which that evil is fruit."). This "effects" approach is also followed where foreign corporations are involved.  See generally Restatement (Second) of Conflict of Laws § 50 (1971) ("A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.").

The case law discussing the specific issue of personal

jurisdiction over foreign corporations in the criminal context is surprisingly sparse and poorly developed.  The two cases that are most on point involve the enforcement of grand jury subpoenas issued to foreign corporations.  In a case involving efforts by an Independent Counsel to subpoena records of foreign companies that possibly violated United States law by selling arms to Iran and providing assistance to the Nicaraguan contras, the D. C. Circuit rejected the argument that personal jurisdiction over the corporations was achieved simply because the court had personal jurisdiction over the company's representative.  In re Sealed Case, 832 F.2d 1268, 1272-73 (D.C. Cir. 1987), abrogated on other grounds by Braswell v. United States, 487 U.S. 99 (1988). Rather, it held that the government needed to provide sufficient evidence of personal jurisdiction over the corporations themselves: "A federal court has personal jurisdiction over a corporation or other business concern with respect to its activities or effects within the United States if that corporation has certain 'minimum contacts' with the United States." Id. at 1273-74 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  "In the case of foreign companies that do not regularly do business here, jurisdiction may be founded on conduct abroad that causes injury within the United States." Id. at 1274.  The D.C. Circuit also suggested that the government could establish personal jurisdiction if it shows that the agent

-8-

"has done business in the United States on behalf of the companies sufficient to give an American court jurisdiction over them." Id. at 1273 n.3.

In the second case, also involving enforcement of grand jury subpoenas, the Second Circuit held that the United States has personal jurisdiction over a foreign corporation accused of conspiring to violate tax laws where at least one overt act occurred in the United States and where there was service of the grand jury subpoena upon the corporation's officers within the territorial boundaries of the United States. Matter of Marc Rich & Co., A.G., 707 F.2d 663, 666-68 (2d Cir. 1983) (citing Melia v. United States, 667 F.2d 300, 304 (2d Cir. 1981)); id. at 667 ("[W]e have subscribed to the 'modern notion' that where a person has sufficiently caused adverse consequences within a state, he may be subjected to its judicial jurisdiction so long as he is given adequate notice and an opportunity to be heard."). See also United States v. Clark, 435 F.3d 1100, 1108 (9th Cir. 2006) (holding that, "to comply with the Due Process Clause of the Fifth Amendment, extraterritorial application of federal criminal statutes requires the government to demonstrate a sufficient nexus between the defendant and the United States 'so that such application would not be arbitrary or fundamentally unfair.'") (quoting United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990)).

Under this case law, to establish personal jurisdiction over a foreign corporation charged with a crime, the government has the burden of demonstrating (via the indictment or affidavits)[3] (1) the "effects" necessary to establish personal jurisdiction; and (2) "minimum contacts" between the corporation (or its agent) and the United States.

The government argues that it has demonstrated personal jurisdiction over Chitron-China because the indictment and affidavits indicate that it used its Massachusetts-based subsidiary as a "conduit" or "front company" for its misconduct in the United States.  The Second Superseding Indictment alleges that Chitron-China itself has committed crimes in the United States.  (See, e.g., SSI ¶ 32 ("On numerous occasions . . . WU and other agents of [Chitron-China] instructed employees of [Chitron-US] not to tell United States companies from which they sought to procure products that they would be exporting the products overseas."); id. at 18 ("It was . . . part of the conspiracy that the defendants WU, WEI, [Chitron-US], and [Chitron-China] used international and domestic telephone calls to plan the procurement and arrange for the delivery, of defense articles and United States commodities classified under Export Classification Control Number 3A001 . . . ."); id. at 37 ("In or about October 2007, in describing how CHITRON would operate in

---

[3] Neither party requested an evidentiary hearing.

light of allegedly new United States export restrictions, WU
stated: "We need to continue to maintain our original contacts
with China's war industry and defense technology units.").)   In
addition, the Second Superseding Indictment charges Chitron-China
with "knowingly and willfully export[ing], and caus[ing] the
export, from the United States to Hong Kong, and to China, of
defense articles designated on the United States Munitions List,"
and "knowingly and willfully export[ing], and caus[ing] the
export, of electronics components and other commodities [subject
to export control by the Department of Commerce] from the United
States to China without having first obtained an export license."
(See id. at 38-40, 41.)

     The supplementary affidavit of Special Agent Hayden provides
additional details of Chitron-China's alleged actions.

> "[I]n or about 2005, [Chitron-China] employees began to
> communicate directly with United States companies on a
> regular basis. . . . These same employees also made
> sales calls into the United States, which appeared to
> be made from the CHITRON-US office, seeking various
> electronic components and other parts.  According to at
> least one employee, CHITRON-US' telephone system was
> set up to conceal the location of the employee making
> the call to, or receiving the call from, United States
> companies.  Similarly, using electronic mail, employees
> of [Chitron-China] frequently represented to United
> States companies that they were working out of
> CHITRON's United States office when in fact those
> employees were located in the PRC."

(Hayden Aff. ¶ 20.)  Accordingly, the Court finds that the
government has provided evidence that Chitron-China engaged in
activities in the United States sufficient to meet the "minimum

contacts" and "effects" test.  As such, the Court may properly exercise personal jurisdiction over defendant Chitron-China.

**2.   <u>Service of the Summons on Chitron-China</u>**

Chitron-China attacks the sufficiency of service of the summons on the ground that Wu was not Chitron-China's officer or agent on June 3, 2009 when he was served.  The Government responds that service was proper because Wu was an officer of Chitron-US on that date.

To exercise personal jurisdiction over a foreign corporation, the government must "succeed in getting [it] within its power." <u>Strassheim</u>, 221 U.S. at 285; <u>cf. United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1085 (1st Cir. 1992) ("[T]hough personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction.").  Under Fed. R. Crim. P. 4(c)(3)(C), there are two requirements for service on a corporation, both of which are essential prerequisites to effective service:

> A summons is served on an organization by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process.  A copy must also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States.

Fed. R. Crim. P. 4(c)(3)(C).  The Government states that it has

complied with both of these requirements by: (1) serving a copy of the summons issued to Chitron-China on Defendant Zhen Zhou Wu at the Donald C. Wyatt Federal Detention Center where he is being held pending trial; and (2) requesting that this Court send a copy of the summons via certified mail to Chitron-US's office in Waltham, Massachusetts.

Chitron-China disputes the sufficiency of service of the summons, stating that Defendant Wu was not an adequate agent to accept service of the summons under Rule 4, and also that Chitron-US's offices do not represent Chitron-China's "last known address within the district."

### a.   Service of Summons on Defendant Wu

The question is whether Defendant Wu was an adequate agent of Chitron-China to accept service of the summons as required by Fed. R. Crim. P. 4 as a result of his status as president of the subsidiary at the time of service.

Generally speaking, in a civil context, service of process on a wholly owned subsidiary does not constitute service of process on the parent corporation where separate corporate identities are maintained. See, e.g., Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 334-35 (1925) (holding that service on a corporation's Alabama agent was insufficient where "the existence of the Alabama company as a distinct corporate entity is . . . in all respects observed"); Adams v. AlliedSignal Gen.

Aviation Avionics, 74 F.3d 882, 885 (8th Cir. 1996) ("[A]bsent
probative evidence that the two corporations are not
independently operated, service on an officer of a subsidiary . .
. does not effect service on the parent corporation"); United
States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330,
335 (W.D.N.Y. 1998); Lasky v. Continental Prods. Corp., 97 F.R.D.
716, 716-17 (E.D. Pa. 1983).

However, in the case of a foreign corporation that has a
subsidiary in the United States, "service on a foreign parent
through proper service on a local subsidiary [is permitted] where
(1) the local subsidiary has minimum contacts with the forum, and
(2) where the relationship between parent and subsidiary is such
that the subsidiary is a mere conduit for the activities of its
parent."  Stanley Works v. Globemaster, Inc., 400 F. Supp. 1325,
1332-1335 (D. Mass. 1975) (finding that the subsidiary was a
"mere conduit" due to "a carefully-sewn web of interrelationships
and interdependence between parent and subsidiary making its
individual identity more apparent than real"); see also I.A.M.
Nat'l Pension Fund, Plan A v. Wakefield Indus., Inc., Div. Of
Capehart Corp., 699 F.2d 1254, 1259-60 (D.C. Cir. 1983) ("While
the relationship of parent and subsidiary alone would not
suffice, where the two corporations are not really separate
entities service on the parent will reach a foreign subsidiary.")
(internal citations omitted); Matter of Marc Rich & Co., 707 F.2d
at 665 (service of a grand jury subpoena on subsidiary's office

-14-

located in the United States was "sufficient to warrant judicial
enforcement" of subpoena against foreign corporation); Heise v.
Olympus Optical Co., Ltd., 111 F.R.D. 1, 2, 6 (N.D. Ind. 1986)
("Although [the] parent-subsidiary relationship, standing alone,
is insufficient for purposes of jurisdiction, service upon a
managing agent of a subsidiary is sufficient" where the plaintiff
submitted evidence that the subsidiary was "formed for the
purpose of marketing and distributing products manufactured by
the parent . . . .").

     The indictment alleges that Defendant Wu is the President of
Chitron-US and has been since its incorporation in 1998.  (SSI ¶
8.)  In addition, the affidavit submitted by Special Agent Hayden
of the Department of Commerce states that "[o]n or about April
29, 2008, WU filed a H1-B Visa Application with the United States
Department of State . . . [indicating] that he is presently
employed as the President of CHITRON-US."  (Hayden Aff. ¶ 11.)
Chitron-China has not submitted any evidence that Wu is no longer
the President or controlling officer of Chitron-US.  As such, if
Chitron-US is proven to be a "mere conduit" for the activities of
Chitron-China, then Defendant Wu is competent to accept service
of the summons as President of Chitron-China's subsidiary
corporation in the United States.

     Borrowing from case law in the civil context, Chitron-China
argues that, in order for the Court to find that service on its
subsidiary was sufficient, the Government must show a "lack of

corporate independence, fraudulent intent, and manifest injustice." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1093 (1st Cir. 1992).  The superseding indictment states that Defendant Wu incorporated Chitron-US as a Massachusetts corporation to serve as Chitron-China's branch office and purchasing office in the United States. (SSI ¶ 7; see also Hayden Aff. ¶ 7.)  In addition, Wu and other agents of Chitron-China allegedly directed and controlled Chitron-US's purchase and ultimate export to China of millions of dollars worth of electronics components and commodities from United States manufacturers and distributors.  (SSI ¶ 8; Hayden Aff. ¶ 19.)  Chitron-China and Chitron-US exchanged tasking lists that identified parts that Chitron-China's customers were interested in procuring (SSI at 18; Hayden Aff. ¶ 19), and used a toll-free United States telephone number to communicate with United States companies in order to disguise the ultimate destination of purchases including defense articles and other controlled United States commodities.  (SSI at 17-18; Hayden Aff. ¶ 20.)  Moreover, Chitron-China's employees contacted United States companies directly and ordered parts, holding themselves out to be employees of Chitron-US.  (SSI at 34-35; Hayden Aff. ¶ 20.)  Wu was the president and an owner of both entities.

These allegations in the indictment and affidavit show a sufficient interrelationship between Chitron-China and Chitron-US

to hold that service of the summons on Wu, who was still the President of the subsidiary at the time of service, was sufficient to effect service on the foreign parent corporation, Chitron-China.

Since the Court finds that the Government has satisfied the first prong of Rule 4(c)(3)(C) through service of Chitron-China's subsidiary, it is unnecessary to discuss Chitron-China's assertions that Defendant Wu is no longer President or General Manager of Chitron-China, and therefore was unable to accept service of the summons under Chinese law.[4]

### b.   Copy of Summons Sent to Chitron-US Office

Given that the Court has found that service on the President of Chitron-China's subsidiary was sufficient to satisfy the first prong of Rule 4(c)(3)(C), it follows that service of a copy of the summons at the address of Chitron-US in Waltham, Massachusetts is sufficient to satisfy the "last known address" requirement of the Rule.  The Second Superseding indictment sufficiently alleges that Chitron-US was a mere conduit for Chitron-China, leading to the conclusion that it was appropriate for the copy of the summons to be sent by certified mail to

---

[4] In its briefing, Chitron-China challenges the Government's failure to return the summons in accordance with Federal Rule of Criminal Procedure 4(c)(4)(B).  However, at oral argument Chitron-China represented to the court that it did not intend to press technicalities on the issue of service, including the issue of the return of service.  (Tr. at 25-26.)  Therefore, the Court does not consider this issue as a basis for the motion to dismiss.

Chitron-US's business address in Massachusetts.

### 3.  **Mutual Legal Assistance Treaty**

As an alternative basis for its motion to dismiss, Chitron-China asserts that the Mutual Legal Assistance Treaty ("MLAT") between the United States and China precludes the service of a criminal summons upon a Chinese corporation except with the assent and assistance of the Chinese government.  This argument is without merit.

The Government correctly states that the MLAT only becomes operative if a request is made by the United States to China for assistance with the service of a summons.  See Agreement on Mutual Legal Assistance in Criminal Matters art. 8 ("MLAT"), United States-P.R.C., June 19, 2000.  In this case, the United States has not made such a request.  Moreover, the MLAT does not create a private right of enforcement of the treaty.  See MLAT art. 1, § 3 (stating that the MLAT "is intended solely for the mutual legal assistance between the parties.  The provisions of [the] Agreement shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.").

### 4.  **Alleged Misnomers in the Indictment**

As a final argument, Chitron-China states that the indictment, as worded, does not correctly name Chitron-China as a defendant and argues that the inclusion of an alias is

prejudicial.  The indictment names "Chitron Electronics Company Limited a/k/a Chi-Chuang Electronics Company Limited" as a defendant in this case.

The Government argues that the names used in the indictment are neither incorrect nor prejudicial.  First, the Government has submitted an affidavit and exhibits, the relevant parts of which the defendant has not challenged, showing that Chitron-China has used both "Chitron Electronics Company Limited" and "Chi-Chuang Electronics Company Limited" as identifying names in its correspondence, marketing literature, and website statements. (See Affidavit of Special Agent Edward J. Hayden ¶¶ 8-10, 14; id., Exs. A, B, D.)  Therefore, the inclusion of both names is appropriate in the indictment.  See United States v. Candelaria-Silva, 166 F.3d 19, 33 (1st Cir. 1999) (stating that inclusion of an alias is appropriate when necessary to fully identify a defendant).  The Court notes that the Government has represented that it would not object to a motion by Defendant Chitron-China to add the name "Shenzhen Chitron Electronics Company Limited" to the Second Superseding Indictment.  (See Gov't Opp'n Mot. Dismiss at 20 n.5.)  The Court will address any issues of jury confusion with respect to Defendant's proper name at trial.

### III.   CONCLUSION

The Court **DENIES** Chitron-China's Motion to Dismiss the indictment.

 **S/PATTI B. SARIS**
United States District Judge