UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 08-10386-PBS |
| v. | Violations: |
| | 22 U.S.C. §§2778(b)(2) & 2778(c) |
| ZHEN ZHOU WU a/k/a ALEX WU, | 22 C.F.R. §§121.1, 123.1, & |
| YUFENG WEI a/k/a ANNIE WEI, | 127.1 - Unlawful Export of |
| BO LI a/k/a ERIC LEE, | Defense Articles; |
| CHITRON ELECTRONICS, INC., | 50 U.S.C. §1705 - Unlawful |
| and | Export of Commerce Controlled |
| CHITRON ELECTRONICS COMPANY | Goods; |
| LIMITED a/k/a CHI-CHUANG | 18 U.S.C. §371 - Conspiracy; |
| ELECTRONICS COMPANY LIMITED | 18 U.S.C. §1001(a)(1) - |
| a/k/a SHENZHEN CHITRON | Scheme to Falsify, Conceal, and |
| ELECTRONICS COMPANY LIMITED, | Cover Up Material Facts; |
| | 18 U.S.C. §1956 - Money |
| | Laundering; |
| | 18 U.S.C. §1546 - Immigration |
| Defendants. | Fraud; |
| | 18 U.S.C. §2 - Aiding and |
| | Abetting; and |
| | 18 U.S.C. §981(a)(1)(C), |
| | 22 U.S.C. §401, 28 U.S.C. §2461, |
| | 19 U.S.C. §1595a(d) - |
| | Forfeiture. |

**THIRD SUPERSEDING INDICTMENT**

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

## I.   Background

1.   CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG

ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS

COMPANY LIMITED ("CHITRON-SHENZHEN") is a distributor of

electronics components in China.  Defendant ZHEN ZHOU WU a/k/a

ALEX WU ("WU"), a citizen and national of the People's Republic

of China ("China"), founded CHITRON-SHENZHEN in or about April

1

1996.  At all times material to this Second Superseding
Indictment ("Indictment"), he has served as its General Manager
and/or President.

2.   Initially, CHITRON-SHENZHEN had a single office located
in Shenzhen, China.  By 2007, CHITRON-SHENZHEN had opened five
branch offices -- three in mainland China, one in Hong Kong (Hong
Kong became a territory of China in 1997, but maintains its own
currency, legal system, and political system.  Hong Kong is
treated as a separate country from China under U.S. export
laws.), and one in the United States.  Its headquarters have
always remained in Shenzhen, China.

3.   In or about June 1996, defendant YUFENG WEI a/k/a ANNIE
WEI ("WEI") entered into an agreement with CHITRON-SHENZHEN to
open its purchasing office in the United States.  According to
this agreement, WEI agreed to procure electronics components for
CHITRON-SHENZHEN and export them to its "shipping agent" located
in "Hong Kong."

4.   In or about August 1996, WEI registered Perfect Science
and Technology Company Limited ("Perfect Science & Technology")
as a for-profit sole proprietorship in Massachusetts for the
purpose of purchasing, receiving, and exporting U.S. made
electronics to CHITRON-SHENZHEN.

5.   When WEI registered Perfect Science and Technology, she
was residing in the United States pursuant to a F-1 student visa.

2

The terms of her F-1 student visa did not allow WEI to work in the United States. The United States government did not grant her authorization to work until May 13, 1998. Nevertheless, beginning in or about August 1996, WEI began working for CHITRON-SHENZHEN in the United States under the name Perfect Science & Technology.

6.  Beginning in or before January 1998 and continuing until in or about May 1998, WEI caused the export of numerous packages of U.S. electronics components to freight forwarding companies in Hong Kong at the direction of CHITRON-SHENZHEN.

7.  On or about March 11, 1998, WU incorporated CHITRON ELECTRONICS, INC., ("CHITRON-US") as a Massachusetts corporation to serve as the United States branch office of CHITRON-SHENZHEN. CHITRON-US replaced Perfect Science & Technology as CHITRON-SHENZHEN's purchasing office in the United States. At all relevant times, CHITRON-US' office has been located at 102 Clematis Avenue, Waltham, Massachusetts.

8.  Since incorporating CHITRON-US, WU has served as its President and has controlled all aspects of its operations. Since its incorporation in 1998, under the direction and control of WU and other agents of CHITRON-SHENZHEN, CHITRON-US has purchased millions of dollars worth of electronics components and commodities from U.S. manufacturers and distributors and has exported them to China.

9. Defendant WEI worked at CHITRON-US from in or about May 1998 until in or about December 2008. Beginning in or about May 1998, WEI became the CHITRON-US office manager and supervised the U.S. office while WU was in China. She served in a supervisory role at CHITRON-US until in or about October 2007 when defendant BO LI a/k/a ERIC LEE ("LI") became the office manager of CHITRON-US. WEI continued to work at CHITRON-US from in or about October 2007 until in or about December 2008 in the area of accounting and finance.

10. Prior to in or about February 2007, LI, a citizen and national of China, worked for CHITRON-SHENZHEN as its manager for North America Purchasing. In that capacity, he oversaw the procurement of U.S. origin goods from the United States. In or about February 2007, LI obtained a U.S. work visa to work at CHITRON-US. Upon arriving in the United States, he served as the assistant office manager of CHITRON-US. He held that position until in or about October 2007. LI then served as the office manager of CHITRON-US from in or about October 2007 until in or about December 2008.

## II. CHITRON'S Operations Involved Procurement of Military Products

11. Beginning in or about September 1998, CHITRON-US began ordering and shipping products, which were described in internal documents as "military" parts, from the United States to CHITRON-SHENZHEN. Many of the end-users for these products were Chinese

4

military related entities. In 2002, WU described China's military and aerospace industries as a major customer of CHITRON. By May 2007, according to WU, Chinese military-related institutions (including research institutes) in electronics and aerospace comprised 25% of CHITRON-SHENZHEN's customers.

12. Beginning in or about July 2005, ALEX WU promoted CHITRON to customers in China as a company that could procure military products. According to CHITRON's website, which, at all relevant times, was shared by CHITRON-SHENZHEN and CHITRON-US, "CHITRON'S specialty is its ability to procure military and industrial as well as hard to find and obsolete parts."

## III. The Export of Defense Articles

13. The export from the United States of arms, munitions, weapons, equipment for military use and related components, and the technology to design, build and test such items ("defense articles and defense services"), is strictly controlled and regulated under federal law.

14. The Arms Export Control Act, Title 22, United States Code, Section 2778 et seq., authorizes the President of the United States to control the import and export of defense articles and defense services in furtherance of world peace, national security, and the foreign policy of the United States and to establish and maintain a United States Munitions List for that purpose. The President has delegated the authority to

regulate the export of defense articles and defense services to the Secretary of State.

15.    The United States Munitions List is a catalog of designated defense articles and defense services that are subject to export restrictions.  Included on the United States Munitions List are military electronics used in radar systems (including missile guidance systems), electronic combat equipment, satellite communications and navigation, and communication systems.

16.  M/A-Com Power Amplifiers bearing part numbers MAAPGM0034 and MAAPGM0038 provide broadband signal amplification with primary applications in phased array radars, point-to-point radio systems, high-speed transmission lines using fiber optics, and airborne radar.  M/A Com Phase Shifters bearing part numbers MAPCGM0001, MAPCGM0002, MAPCGM0003, and MAPCGM0004-DIE have primary applications in electronic warfare, phased array radar, and satellite communications.

17.  Velocium High Power Amplifiers bearing part number APH502 have primary applications in military radar, fire control, and military guidance and control equipment.

18.  Rad Hard Syncronous Rectifiers bearing part number IRHSNA57064D are used primarily in military satellite global positioning systems.  They are also used in a variety of other military applications including flight controls for military aircraft.

6

19.  At all times material to the Indictment, M/A-Com Amplifiers bearing part numbers MAAPGM0034 and MAAPGM0038, M/A Com Phase Shifters bearing part numbers MAPCGM0001, MAPCGM0002, MAPCGM0003, and MAPCGM0004-DIE, Velocium High Power Amplifier bearing part number APH502, and Rad Hard Syncronous Rectifier bearing part number IRHSNA57064D were defense articles on the United States Munitions List.

20.  Any person who intends to export from the United States any article or service on the United States Munitions List is first required to obtain a license from the U.S. Department of State.

21.  Since in or about 1990, the U.S. government has maintained an arms embargo against China that prohibits the export, re-export, or re-transfer of any defense article to China.  Beginning in February 1990, the U.S. Congress has prohibited the export of defense articles, technical data, and services to China.  In October 1998, for reasons of national security, Congress expanded the arms embargo against China to include satellite technology, which was at that time added to the United States Munitions List.  In sum, since 1990, it has been the policy of the United States and the U.S. Department of State to deny license applications and any other written requests or approvals for the export, re-export, or retransfer of defense articles destined for China.

7

22.   No agent from CHITRON-US or CHITRON-SHENZHEN (including any CHITRON branch office) ever applied for, or obtained, a license from the U.S. Department of State to export defense articles from the United States.

IV.   **The Export of Commerce Controlled Goods**

23.   In general, except for items exclusively controlled for export and re-export by the Department of State, all items made, wholly or in part, in the United States, wherever located, are subject to the Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730-774.   The Department of Commerce promulgates the Export Administration Regulations and maintains the Commodity Control List, which specifies the goods and technologies that require export licenses prior to shipment outside of the United States.

24.   The Export Administration Regulations place limitations on the export of those goods and technology that the Secretary of Commerce deems could make a significant contribution to the military potential of other countries, could prove detrimental to the national security of the United States, or are contrary to the foreign policy of the United States.   For instance, the Export Administration Regulations control exports and re-exports of "dual-use items," that is, commercial items that also have a military or nuclear proliferation application, to foreign countries.   With limited exceptions, the Export Administration

8

Regulations prohibit any person from exporting or causing the exportation from the United States of dual-use items designated as Export Classification Control Number 3A001, which are controlled for national security reasons, to China, without having first obtained an export license from the U.S. Department of Commerce.

25.  Digital-to-Analog Converters bearing part numbers CA3338AD, AD660SQ/883B, and ADS5463IBPFBT, and Analog-to-Digital Converters bearing part numbers AD565ATD, AD574ATD, AD6645ASQ-80, AD6645SQ-105, AD7760BSVZ, AD9245BCP-80, AD9433BSQ-125-ND, ADC08D1500CIYB/NOPB, ADS1610IPAPT, ADS5463IPFP, ADS8411IBPFBT, LTC2242IUP-12#PBF, THS1403IPFB, and THS1408IPFB have applications in radar systems, electronic warfare, and military communications systems.

26.  Power Amplifiers bearing part number MAAPGM0021 and ALH102C have applications in military radar, satellite and radio communications, and military phased array antennae systems.

27.  Programmable Array Logic Devices bearing part numbers 5962-8984102LA and 5962-8983903RA have applications in missile and space systems.  Memory microcircuits bearing part number 5962-8959820MZA are used in conjunction with Programmable Array Logic Devices in numerous military applications including military radar, and missile and aerospace systems.

28.  At all times material to the Indictment, the Department

of Commerce required a license for the export of Digital-to-
Analog Converters bearing part numbers CA3338AD, AD660SQ/883B,
and ADS5463IBPFBT, Analog-to-Digital Converters bearing part
numbers AD565ATD, AD574ATD, AD6645ASQ-80, AD6645SQ-105,
AD7760BSVZ, AD9245BCP-80, AD9433BSQ-125-ND, ADC08D1500CIYB/NOPB,
ADS1610IPAPT, ADS5463IPFP, ADS8411IBPFBT, LTC2242IUP-12#PBF,
THS1403IPFB, and THS1408IPFB, Power Amplifiers bearing part
numbers MAAPGM0021 and ALH102C, Programmable Array Logic Devices
bearing part numbers 5962-8984102LA, 5962-8983903RA, and Memory
Microcircuits bearing part number 5962-8959820MZA, to China for
national security reasons. There were no applicable license
exceptions for exports of these items to China.

29. No agent from CHITRON-US or CHITRON-SHENZHEN (including
any CHITRON branch office) ever applied for, or obtained, a
license from the Department of Commerce to export Digital-to-
Analog Converters bearing part numbers CA3338AD, AD660SQ/883B,
and ADS5463IBPFBT, Analog-to-Digital Converters bearing part
numbers AD565ATD, AD574ATD, AD6645ASQ-80, AD6645SQ-105,
AD7760BSVZ, AD9245BCP-80, AD9433BSQ-125-ND, ADC08D1500CIYB/NOPB,
ADS1610IPAPT, ADS5463IPFP, ADS8411IBPFBT, LTC2242IUP-12#PBF,
THS1403IPFB, and THS1408IPFB, Power Amplifiers bearing part
numbers MAAPGM0021 and ALH102C, Programmable Array Logic Devices
bearing part numbers 5962-8984102LA and 5962-8983903RA, or
Microcircuits bearing part number 5962-8959820MZA, to China.

## V.   WU and WEI Established Procedures To Circumvent U.S. Export Laws

30.   Beginning in or about 1996, WU and WEI became aware that U.S. electronics components were subject to U.S. export laws.  On numerous occasions between in or about August 2000 and December 2008, U.S. companies advised defendants WU, WEI, LI, and agents of CHITRON-US and CHITRON-SHENZHEN that military products and certain electronic components (including amplifiers, phase shifters, programmable array logic devices, and analog-to-digital converters) were subject to U.S. export control laws and required export licenses.

31.   As the purchasing office for CHITRON-SHENZHEN, CHITRON-US, under the direction and control of WU and WEI, solicited quotes and acquired products from U.S. companies for CHITRON-SHENZHEN'S customers located in mainland China.  At the instruction of WU and WEI, U.S. companies were told to ship all ordered products to CHITRON-US.

32.   On numerous occasions between in or about April 1997 and in or about March 2002, WU and other agents of CHITRON-SHENZHEN instructed employees of CHITRON-US not to tell U.S. companies from which they sought to procure products that they would be exporting the products overseas.  WU further deliberately chose to withhold the identity of the end-users in mainland China from U.S. companies.

33.   WU maintained the sales and shipment records of

11

CHITRON-SHENZHEN on his computer, including the identity of each Chinese end-user for which products were procured and delivered to mainland China by CHITRON-US.

34. Upon receipt of the ordered products by CHITRON-US, at the direction and control of WU and WEI, the U.S. commodities were inspected and consolidated into packages, which were exported on a weekly basis to mainland China using freight forwarders in Hong Kong.

35. In or about 2005, WU opened CHITRON'S branch office in Hong Kong ("CHITRON-HK"). The office was set up to receive shipments of U.S. commodities from CHITRON-US and re-ship the goods to CHITRON-SHENZHEN. Prior to the opening of the Hong Kong office, CHITRON-US, under the management and control of both WU and WEI, used three Hong Kong companies to serve as its freight forwarders into mainland China. These freight forwarders received shipments of U.S. origin commodities from CHITRON-US and re-shipped the vast majority of these commodities from Hong Kong to CHITRON-SHENZHEN.

## VI. CHITRON-US Filed and Caused to be Filed Fraudulent Shipping Records

36. From on or about January 1, 2003 through on or about December 2, 2008, CHITRON-US caused shipping companies -- primarily the United Parcel Service ("UPS") -- to file 663 Shipper's Export Declarations ("SEDs") with the U.S. Department of Commerce. An SED is required to be filed for all exports of

12

any commodity valued at or above $2500, or for which an export license is required for the shipment outside the United States to the final destination.

37.   More than 90% of the SEDs filed on behalf of CHITRON-US falsely listed a foreign freight forwarder (be it a Hong Kong company hired for that purpose or CHITRON-HK) as the ultimate consignee, i.e., the final end-user.

## VII. Exports to Shanghai Academy of Spaceflight Technology

38.   Beginning in 1997, the U.S. Department of Commerce began publishing and maintaining the "Entity List." The Entity List is a listing of foreign end-users (businesses, individuals, research institutions, governments, and private organizations) that are subject to specific license requirements for the export of specified items. The U.S. Department of Commerce has determined that these end-users present an unacceptable risk of diversion of U.S. technology to develop weapons of mass destruction (and missiles to deliver those weapons) or have engaged in activities that are contrary to U.S. national security and/or foreign policy interests.

39.   Shanghai Academy of Spaceflight Technology is one of the seven design academies that constitute the China Aerospace Science and Technology Corporation. It conducts research for the development of, and manufactures, tactical missiles, carrier rockets, space launch vehicles, and satellites.

40. On or about May 28, 1999, the U.S. Department of Commerce added Shanghai Academy of Spaceflight Technology to the Entity List. Therefore, since that time any export of U.S. commodities having an export commodity classification number other than EAR99 to Shanghai Academy of Spaceflight required an export license from the U.S. Department of Commerce.

41. Since on or about September 21, 2005, WU has had a copy of the Entity List downloaded onto his computer. The downloaded Entity List included the name and address for Shanghai Academy of Spaceflight Technology.

42. According to records maintained on WU's computer, CHITRON-US acquired U.S. commodities on behalf of Shanghai Academy of Spaceflight Technology on 17 different occasions in 2006. WEI and WU arranged for those commodities to be exported from the United States and delivered to Shanghai Academy of Spaceflight Technology in China.

43. On or about March 31, 2006, CHITRON-US exported 2 Xilinx devices, part number XC2V30004FG676C, classified under Export Classification Control Number 3A001, to CHITRON-SHENZHEN (through Hong Kong) for delivery to Shanghai Academy of Spaceflight Technology.

44. On or about April 14, 2006, CHITRON-US exported 2 Xilinx devices, part number XCF32PV048C, classified under Export Classification Control Number 3A991, to CHITRON-SHENZHEN (through

14

Hong Kong) for delivery to Shanghai Academy of Spaceflight Technology.

45. As a result of Shanghai Academy of Spaceflight Technology being designated on the Entity List, CHITRON-US was required to obtain a license from the Department of Commerce prior to exporting any of these items to China. No agent of CHITRON-US or CHITRON-SHENZHEN (including any CHITRON branch office) ever applied for, or obtained, a license to export any item to Shanghai Academy of Spaceflight Technology.

COUNT 1:        (18 U.S.C. §371 - Conspiracy)

The Grand Jury charges that:

The allegations contained in paragraphs 1-45 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From a date unknown to the Grand Jury, but no later than in or about April 1997, and continuing thereafter until in or about October 2007, in the District of Massachusetts and elsewhere,

> ZHEN ZHOU WU a/k/a ALEX WU,
> YUFENG WEI a/k/a ANNIE WEI,
> BO LI a/k/a ERIC LEE,
> CHITRON ELECTRONICS, INC., and
> CHITRON ELECTRONICS COMPANY LIMITED a/k/a
> CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a
> SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED,

defendants herein, did willfully conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to commit an offense against the United States, to wit:

a.   to knowingly and willfully export, attempt to export, and cause the export, from the United States to China, of defense articles on the United States Munitions List, without first having obtained from the Department of State a license for such export or written authorization for such export, in violation of Title 22, United States Code, Section 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1,

16

123.1, and 127.1; and

b.    to knowingly and willfully export, attempt to export,
and cause the export, from the United States to China,
of U.S. commodities, without having first obtained an
export license from the Department of Commerce, and
with knowledge that said commodities were destined for
China, a controlled country (a country to which exports
of these items are controlled for national security
reasons), in violation of Title 50, United States Code,
Appendix, Section 2410(b), Title 50, United States
Code, Section 1705, Title 15, Code of Federal
Regulations, Sections 736.2(b)(1), 736.2(b)(10), 764.2,
and 764.3(b)(2)(i), Executive Order 13222.

## MANNER AND MEANS

The manner and means by which the conspiracy was sought to
be accomplished included, among other things, the following
during the dates of the alleged conspiracy:

1.    It was part of the conspiracy that defendants WU, WEI, LI,
CHITRON-US, and CHITRON-SHENZHEN sought to acquire defense
articles and U.S. Commerce controlled commodities from
United States companies for delivery to mainland China
through Hong Kong.

2.    It was further part of the conspiracy that the defendants
WU, WEI, LI, CHITRON-US, and CHITRON-SHENZHEN used

17

international and domestic telephone calls to plan the
procurement, and arrange for the delivery, of defense
articles and U.S. Commerce controlled commodities to
CHITRON-US (and its predecessor, Perfect Science &
Technology).

3. It was further part of the conspiracy that the defendants
WU, WEI, LI, CHITRON-US, and CHITRON-SHENZHEN exchanged
tasking lists on a daily basis between China and the United
States. These tasking lists contained lists of parts that
CHITRON-SHENZHEN'S customers were interested in procuring,
quotes obtained by agents of CHITRON-US (and its
predecessor, Perfect Science & Technology) and CHITRON-
SHENZHEN, orders that CHITRON-SHENZHEN employees and
defendant WU wanted CHITRON-US (and its predecessor, Perfect
Science & Technology) to place, and the status of pending
orders and shipments.

4. It was further part of the conspiracy that the defendants
WU, WEI, LI, CHITRON-US, and CHITRON-SHENZHEN used U.S.
shipping companies, including UPS, to ship the defense
articles and U.S. Commerce controlled commodities to Hong
Kong.

5. It was further part of the conspiracy that the defendants
WU, WEI, LI, CHITRON-US, and CHITRON-SHENZHEN used Hong Kong
freight forwarders (including CHITRON-HK) to ship the U.S.

18

manufactured defense articles and Commerce controlled

commodities from Hong Kong to mainland China.

### OVERT ACTS

In furtherance of the conspiracy, and to effect the objects

thereof, the defendants, and other co-conspirators, committed

overt acts, including but not limited to the following:

6. On or about April 7, 1997, defendant WEI advised WU in a

tasking list:

> Today, I made a big mistake for this part. When
> Hamilton asked me who want the part so that they will
> try to get better price from the factory for 30 pcs, I
> was very honest and told them my customer is in China.
> I waited for the whole day to get the feedback.  But
> then they told me they cann't [sic] sell it to me
> because I'll export it to China.  I was so angry.  But
> they said it's Mot [sic] law.  The parts can't be
> exported. I couldn't persuade them.  So I have to call
> Adrian. He agree to offer 98.00, at the same time he
> will give us the credit we paid for the extra shipping
> fee tomorrow.  He hoped he can get PO for this part
> tomorrow.  I don't know if it is OK.  I really learned
> a big lesson today.  I shouldn't provide extra infor
> [sic] to some place.

7. On or about April 7, 1997, in an e-mail, WU responded to

WEI's "mistake" in disclosing to a U.S. company that they were

exporting to China: "Do not let them know how we do business ...

Today the big lessen [sic] is you do not have to say you sell

parts to China. Just say you are broker in Boston."

8. On or about April 10, 1997, in tasking list WU e-mailed to

WEI, he instructed her with regard to a potential order "DO NOT

SAY YOU EXPORT PARTS, JUST SAY YOUR ARE BROKER."

9. On or about April 18, 1997, in an e-mail, WU asked WEI to contact three U.S. companies for quotes for two products and instructed her: "do not say you export to China, just say you are trading company, and you are a buyer."

10. On or about May 11, 1998, defendant WU sent WEI a tasking list instructing her: "When asked [during telephone calls with U.S. companies] where to sell the parts, never tell it is for overseas!"

11. In or about September 1998, WEI ordered military parts on behalf of CHITRON-SHENZHEN. With regard to this order, in a tasking list sent by WU, WEI was instructed to "make sure it is all the same date code and in original package for it is military parts and expensive."

12. On or about September 15, 1998, in a tasking list sent from China, WU instructed WEI to pay attention to quality control. WU explained to WEI that a Chinese customer had returned 7 pieces because those were not the same as the "other 30 pcs marked with military number (starting 5962)."

13. On or about September 28, 1998, WU sent a tasking list to WEI instructing employees of CHITRON-SHENZHEN and CHITRON-US, with regard to a request for a quote, not to call EDO Corporation, a U.S. company. The tasking list stated: "Pls have customer tell us what is this part before we could do anything. This is higly [sic] militarized manufacturer in US. We got to be

20

careful!"

14. In or about January 1999, WU sent a tasking list to WEI directing her to order part number CY7C185A-35LMB "with military certification... Pls. pay speical [sic] to date code (the same) and military certification for this [sic] parts, it's used by military factory and it will pass very strict test."

15. On or about October 25, 1999, WU advised WEI via electronic mail that WEI already "got the quote [from Data Delay Devices] for the military version. All you need is to get a copy of the related military certificate. The customer never bought the part before, and they are very strict about the quality. So they need to get the military certificate approved by their quality control department before they could issue orders to us (we could get the order only after we give them a sample copy of the military certificate)."

16. On or about February 23, 2000, WU asked WEI in a tasking list sent from China to cancel an order for a "military rep.," and stated: "If there is something different on part#, it will take long time to be approved by military rep. It will take half a year at the least. Usually, military rep and buyer won't take this kind of responsibility and think it is trouble to them."

17. On or about February 25, 2000, WU sent WEI a tasking list that indicated that UTMC Microelectronic Systems (a U.S. supplier of integrated circuits and circuit card assemblies for the

21

aerospace and defense industries) needed to the know the identity of the end-user for an order for parts bearing model number 5962-8957701XA. The tasking list indicated that a CHITRON employee had contacted UTMC and gave them a "MA fax and CA tel." and instructed "I insist not to say we do exporting. See what would happen!"

18.     In or about March 2000, WU sent WEI a tasking list that admonished her regarding an order she shipped to China in which she mistakenly sent refurbished parts rather than new ones.   The tasking list advised WEI that the Chinese customer could not use the "refurbs because it was for military equipment.  Nobody dares to [be] in charge of using this kind of parts... Be careful next time, please."

19.     On or about May 31, 2000, WU sent a tasking list to WEI instructing her to immediately fax a purchase order for part number 5962-8862801XA, which was described in the tasking list as a "very sensitive military device."

20.     In or about August 2000, WU explained to an employee located in Canada in a tasking list that "5962-8864405XA is one of the universal part numbers in part number system for military level parts."

21.     On or about July 9, 2001, in a tasking list sent from China, WU instructed a CHITRON-US employee to order part number ADC0801LCD but advised "Pls make sure this is a military level

22

part. Otherwise, pls do not order it."

22. In or about September 2001, WU advised employees of CHITRON-US and CHITRON-SHENZHEN in a tasking list that, with regard to a quote for Merrimac IQP-25S-120B, "they need end user info and we usually do not give any of this kind of info to our supplier. No call!"

23. In or about September 2001, WU sent a tasking list to WEI that instructed her to place an order for 80 more units of "SN54111J" and explained it was being used "in Army guided missile, 1 missile need 3 pieces of SN54111J." WEI had already placed an order for 10 units of SN54111J in or about August 2001.

24. On or about March 27, 2002, WU instructed an employee of CHITRON-US in a tasking list: "The key is to avoid submitting end user info and get the oarts [sic] ordered. This is a standard memory item in military level. In many cases when you contact suppliers, you do not have to tell them we are [an] exporter."

25. In or about July 2002, WU advised representatives of Amplifonix that CHITRON-US was fully aware of U.S. export laws, followed U.S. export laws, and that he even provided training on U.S. export laws when in fact CHITRON-US did not have any export compliance procedures and exported hundreds of U.S. commodities to China monthly without inquiring whether any of these goods required an export license and could be lawfully exported to China.

26. In or about July 2002, WU wrote instructions for CHITRON-SHENZHEN employees entitled "Introduction to Amplifonix Products." In this document, WU described Amplifonix as mainly involved "in the production and sales of high-end amplifiers and related products for military applications." He indicated that the applications for these products included:

- Various military communication devices, short wave and ultra short wave stations, transmitters, receivers, intercom systems.
- Radars, IFF equipment, navigation equipment.
- Satellite ground receiving, aeronautical communication, [and] maritime communication ..."

WU further instructed his employees in this document to target military factories and military research institutes, including the 13th, 14th, 29th, 43rd, 52nd, and 55th Research Institutes, for sales of Amplifonix products.

27. On or about August 21, 2002, WEI asked WU via electronic mail whether she should disguise a part number on CHITRON-US' shipping records because the part was not authorized for shipment to China and WEI was concerned about scrutiny by Customs.

28. In or about March 2003, WU instructed an employee of CHITRON-US to place an order for 30 Velocium amplifiers bearing part number ALH102C from a U.S. company for delivery to CHITRON-US and then shipment of the parts to China. Said parts were in fact shipped to CHITRON-SHENZHEN. Velocium amplifiers bearing part number ALH102C are classified by the U.S. Department of Commerce as 3A001 and required a license to export to China. No

24

agent of CHITRON-US or CHITRON-SHENZHEN applied for, or obtained,
a license prior to the export of said Velocium amplifiers.

29.    In or about March 2003, upon receipt of 30 Velocium
amplifiers bearing part number ALH102C at CHITRON-SHENZHEN, at
the direction of WU, said parts were delivered to the 41st
Research Institute of the China Electronics Technology Group
Corporation, a Chinese military related entity.  The 41st
Research Institute provides testing and measuring equipment for
radars and satellites to the Chinese military.

30.    On two occasions between in or about April 2003 and in or
about May 2003, an employee of CHITRON-SHENZHEN, under the
direction and control of WU, requested that CHITRON-US place two
orders for a total of 550 Velocium amplifiers bearing part number
ALH102C from a U.S. company for delivery to CHITRON-US and then
shipment of the parts to China.  As with the March 2003 order,
CHITRON-US, under the direction and control of WU and WEI,
shipped these amplifiers from CHITRON-US to CHITRON-SHENZHEN
without applying for, or obtaining, the necessary export
licenses.

31.    In or about June 2003, at a trade show held in Philadelphia,
Pennsylvania, during a conversation with WEI and an employee of
CHITRON-US, a representative of Northrop Grumman/Velocium learned
that CHITRON-US was a reseller of electronics, which exported the
goods it procured from U.S. companies, including Velocium parts,

25

to China. After learning this information, the Northrop Grumman representative asked whether CHITRON-US had obtained the necessary export licenses prior to shipping the Velocium parts to China. WEI responded that CHITRON-US had indeed obtained export licenses prior to shipping those parts to China when in fact no agent of CHITRON-US or CHITRON-SHENZHEN had applied for or obtained any export licenses from the U.S. Department of Commerce.

32. In or about January 2004, WU attempted to procure and export to China through CHITRON-US 30 Velocium High Powered Amplifiers bearing part number APH502 for the 41st Research Institute, a Chinese military entity, knowing that they required an export license. At all times material to the Indictment, Velocium High Powered Amplifiers bearing part number APH502 were defense articles designated on the United States Munitions List, which required a license for export from the U.S. Department of State.

33. On or about March 16, 2004, a CHITRON-US employee notified WEI that after ordering Datel Analog-to-Digital Converters bearing part number ADC815MM, the U.S. vendor indicated "that because this is a military part, the US Bureau of Export forbids export for this part." The CHITRON-US employee further advised WEI that he had sent a request to the U.S. Bureau of Export to confirm the export restriction and that this process would take 72 hours. WEI responded "if there is a problem with the vendor,

26

I'll try to find a way to order it through somebody else."

34. On or about March 12, 2004, at the direction and control of WU and WEI, CHITRON-US placed an order for 4 M/A Com Phase Shifters bearing part number MAPCGM0001 from a U.S. company. At all times material to the Indictment, M/A Com Phase Shifters bearing part number MAPCGM0001 were defense articles designated on the United States Munitions List, which required a license for export from the U.S. Department of State.

35. On or about March 20, 2004, WEI caused 4 M/A Com Phase Shifters bearing part number MAPCGM0001 to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license. The M/A Com Phase Shifters were shipped by UPS from CHITRON-US to New Technology Company, a freight forwarder in Hong Kong, which then delivered the parts to CHITRON-SHENZHEN.

36. In or about April 2004, at the direction and control of WU and WEI, CHITRON-US placed orders for 8 M/A Com Power Amplifiers bearing part numbers MAAPGM0034 and MAAPGM0038 from a U.S. company after being notified that "most M/A com parts need license now" and that these parts required an export license from the Department of State. At all material times to the Indictment, M/A Com Power Amplifiers bearing part numbers MAAPGM0034 and MAAPGM0038 were defense articles designated on the United States Munitions List, which required a license for export from the U.S. Department of State.

27

37. On or about April 24, 2004, WEI caused 8 M/A Com Amplifiers bearing part numbers MAAPGM0034 and MAAPGM0038 to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining a export license. The M/A Com Amplifiers were shipped by UPS from CHITRON-US to New Technology Company, a freight forwarder in Hong Kong, which then delivered the parts to CHITRON-SHENZHEN.

38. On or about April 23, 2004, WEI prepared a fraudulent shipping invoice for the M/A Com Amplifiers, bearing part numbers MAAPGM0034 and MAAPGM0038, which indicated that the parts did not require an export license for shipment to Hong Kong. This invoice was provided to UPS prior to the export.

39. On numerous occasions, from in or about April 2004 through in or about May 2007, WEI prepared shipping invoices, which were provided to UPS, that indicated that the commodities being shipped by CHITRON-US did not require an export license when in fact many of those shipments contained items subject to U.S. Department of State or U.S. Department of Commerce controls and required a license to export to China.

40. On or about July 27, 2004, at the direction and control of WU and WEI, CHITRON-US placed an order for 10 M/A Com Phase Shifters bearing part number MAPCGM0004-DIE from a U.S. company. At all material times to the Indictment, M/A Com Phase Shifters bearing part number MAPCGM0004-DIE were defense articles designated on the United States Munitions List, which required a

license for export from the U.S. Department of State.

41. On or about July 31, 2004, WEI caused 10 M/A Com Phase Shifters bearing part number MAPCGM0004-DIE to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license. The Phase Shifters were shipped by UPS from CHITRON-US to New Technology Company, a freight forwarder in Hong Kong, which then delivered the parts to CHITRON-SHENZHEN.

42. On or about November 20, 2004, at the direction and control of WU and WEI, CHITRON-US placed an order for 60 Lattice Semiconductor Programmable Array Logic Devices bearing part number 5962-8983903RA from a U.S. company.

43. On or about November 25, 2004, WEI caused 60 Lattice Semiconductor Programmable Array Logic Devices bearing part number 5962-8983903RA to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license. The Lattice Devices were shipped by UPS from CHITRON-US to Tung-D International Company Limited, a freight forwarder in Hong Kong, which then delivered the parts to CHITRON-SHENZHEN.

44. Between on or about December 3, 2004 and on or about December 6, 2004, at the direction and control of WU and WEI, CHITRON-US placed two orders for a total of 2876 Lattice Semiconductor Programmable Array Logic Devices bearing part number 5962-8983903RA from a U.S. company.

45. On or about December 11, 2004, WEI caused 2876 Lattice

Semiconductor Programmable Array Logic Devices bearing part
number 5962-8983903RA to be shipped from CHITRON-US to CHITRON-
SHENZHEN. The Lattice Devices were shipped by UPS from CHITRON-
US to New Technology Company, a freight forwarder in Hong Kong,
which then delivered the parts to CHITRON-SHENZHEN.

46. In or about December 2004, at the direction and under
control of WU and WEI, CHITRON-US placed an order for 50 Analog
Devices Analog-to-Digital Converters bearing part number
AD9245BCP-80 from a U.S. company.

47. On or about December 7, 2004, WEI caused 50 Analog-to-
Digital Converters bearing part number AD9245BCP-80 to be shipped
from CHITRON-US to CHITRON-SHENZHEN without obtaining an export
license. The Analog-to-Digital Converters were shipped by UPS
from CHITRON-US to Tung-D International Company Limited, a
freight forwarder in Hong Kong, which then delivered the parts to
CHITRON-SHENZHEN.

48. In or about December 2004, upon receipt of 50 Analog-to-
Digital Converters bearing part number AD9245BCP-80, CHITRON-
SHENZHEN, at the direction of WU, delivered them to the 41st
Research Institute of the China Electronics Technology Group
Corporation, a Chinese military entity.

49. On or about February 25, 2005, at the direction and control
of WU and WEI, CHITRON-US placed an order for 28 M/A Com
Amplifiers bearing part number MAAPGM0021 from a U.S. company.

30

50.   On or about March 5, 2005, WEI caused 28 M/A Com Amplifiers
bearing part number MAAPGM0021 to be shipped from CHITRON-US to
CHITRON-SHENZHEN without obtaining an export license.   The M/A
Com Amplifiers were shipped by UPS from CHITRON-US to New
Technology Company, a freight forwarder in Hong Kong, which then
delivered the parts to CHITRON-SHENZHEN.

51.   In connection with the shipment of 28 M/A Com Amplifiers
bearing part number MAAPGM0021 to China, WEI signed a UPS waybill
in which she falsely indicated that the electronic components
being shipped (including the M/A Com amplifiers) did not require
an export license, that the country of ultimate destination was
Hong Kong, and that the shipment complied with the Export
Administration Regulations.

52.   In or about November 2005, at the direction and control of
WU and WEI, CHITRON-US placed an order for 2 Cypress Memory
Microcircuits bearing part number 5962-8959820MZA from a U.S.
company.

53.   On or about November 12, 2005, WEI caused 2 Cypress Memory
Microcircuits bearing part number 5962-8959820MZA to be shipped
from CHITRON-US to CHITRON-SHENZHEN without obtaining an export
license.   The Cypress Microcircuits were shipped by UPS from
CHITRON-US to CHITRON-HK, which then delivered the parts to
CHITRON-SHENZHEN.

54.   In connection with the shipment of 2 Cypress Memory

31

Microcircuits bearing part number 5962-8959820MZA to China, WEI
signed a UPS waybill in which she falsely indicated that the
electronic components being shipped (including Cypress Memory
Microcircuits) did not require an export license and that the
country of ultimate destination was Hong Kong.

55.  In or about February 2006, at the direction and control of
WU and WEI, CHITRON-US placed an order for 4 Analog-to-Digital
Converters bearing part number THS1408IPFB from a U.S. company.

56.  On or about February 24, 2006, WEI caused 4 Analog-to-
Digital Converters bearing part number THS1408IPFB to be shipped
from CHITRON-US to CHITRON-SHENZHEN without obtaining an export
license.  These Analog-to-Digital Converters were shipped by UPS
from CHITRON-US to CHITRON-HK, which then delivered the parts to
CHITRON-SHENZHEN.

57.  In or about February 2006, at the direction and control of
WU and WEI, CHITRON-US placed an order for 10 Analog-to-Digital
Converters bearing part number AD574ATD from a U.S. Company.

58.  On or about February 24, 2006, WEI caused 10 Analog-to-
Digital Converters bearing part number AD574ATD to be shipped
from CHITRON-US to CHITRON-SHENZHEN without obtaining export
license.  These Analog-to-Digital Converters were shipped by UPS
from CHITRON-US to CHITRON-HK, which then delivered the parts to
CHITRON-SHENZHEN.

59.  In or about February 2006, upon receipt of the 10 Analog-to-

Digital Converters bearing part number AD574ATD, CHITRON-SHENZHEN, at the direction of WU, delivered these parts to the 13th Research Institute of the China Electronics Technology Group Corporation, a Chinese military entity.

60.  In or about April 2006, WEI placed an order for 111 Analog-to-Digital Converters bearing part number AD9433BSQ-125-ND from a U.S. company for delivery to CHITRON-US.

61.  On or about April 7, 2006, WEI caused 111 Analog-to-Digital Converters bearing part number AD9433BSQ-125-ND to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license.  The Analog-to-Digital Converters were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

62.  In or about April 2006, WEI placed an order for 20 Analog-to-Digital Converters bearing part number ADS8411IBPFBT from a U.S. company for delivery to CHITRON-US.

63.  On or about April 14, 2006, WEI caused 20 Analog to Digital Converters bearing part number ADS8411IBPFBT to be shipped to CHITRON-SHENZHEN without obtaining an export license.  The Converters were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

64.  In or about June 2006, at the direction and control of WU and WEI, CHITRON-US placed an order for 7 Analog Devices Microcircuits bearing part number AD565ATD from a U.S. company.

33

65. On or about June 13, 2006, WEI caused 7 Analog Devices Microcircuits bearing part number AD565ATD to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license. The Microcircuits were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

66. In or about June 2006, upon receipt of the 7 Analog Devices Microcircuits, CHITRON-SHENZHEN, at the direction of WU, delivered them to the 15th Research Institute of the China Electronics Technology Group Corporation, a Chinese military related entity. The 15th Research Institute develops and researches military information systems and products as well as military command automation, aerospace measurements, and control projects.

67. On or about June 12, 2006, at the direction and control of WU and WEI, CHITRON-US placed an order for 10 M/A Com Phase Shifters bearing part number MAPCGM0003 from a U.S. company. Prior to placing this order, CHITRON-US was informed by a U.S. company that the export of these M/A Com Phase Shifters required a license from the Department of State. At all times material to the Indictment, M/A Com Phase Shifters bearing part number MAPCGM0003 were defense articles designated on the United States Munitions List, which required a license for export from the U.S. Department of State.

34

68. On or about June 16, 2006, WEI caused 10 M/A Com Phase Shifters bearing part number MAPCGM0003 to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license. The Phase Shifters were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

69. On or about September 16, 2006, WU downloaded onto his computer a Department of Defense Handbook, which contains lists of part numbers and their standard micro-circuit drawings for thousands of electronics components approved for acquisition by the United States Department of Defense for military applications.

70. In or about April 2007, a CHITRON-SHENZHEN employee placed an order for 5 Analog-to-Digital Converters bearing part number AD9245BCP-80 from a U.S. company. The CHITRON-SHENZHEN employee represented that he worked at CHITRON-US and requested that the parts be delivered to CHITRON-US.

71. On or about April 13, 2007, LI, with the knowledge and under the control of WU, caused 5 Analog-to-Digital Converters bearing part number AD9245BCP-80 to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license. The Analog-to-Digital Converters were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

72.   In or about April 2007, a CHITRON-SHENZHEN employee placed an order for 6 Rad Hard Synchronous Rectifiers bearing part number IRHSNA57064D from a U.S. company for delivery to CHITRON-US.   At all times material to the Indictment, Rad Hard Synchronous Rectifiers bearing part number IRHSNA57064D were defense articles designated on the United States Munitions List, which required a license for export from the U.S. Department of State.

73.   On or about April 17, 2007, LI, with the knowledge and under the control of WU, caused 6 Rad Hard Synchronous Rectifiers bearing part number IRHSNA57064D to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining an export license.   The Rectifiers were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

74.   In or about April 2007, a CHITRON-SHENZHEN employee placed two orders for a total of 20 Analog-to-Digital Converters bearing part number ADS5463IPFP from U.S. companies for delivery to CHITRON-US.

75.   In or about April 2007, CHITRON-US, under the direction and control of WU, placed an order for 20 Analog-to-Digital Converters bearing part number AD7760BSVZ from a U.S. company.

76.   On or about April 24, 2007, LI, with the knowledge and under the control of WU, caused 20 Analog-to-Digital Converters bearing part number ADS5463IPFP and 20 Analog-to-Digital Converters

36

bearing part number AD7760BSVZ to be shipped from CHITRON-US to CHITRON-SHENZHEN without obtaining export licenses. The Converters were shipped by UPS from CHITRON-US to CHITRON-HK, which then delivered the parts to CHITRON-SHENZHEN.

77. On or about October 18, 2007, WU terminated a CHITRON-US employee after the employee advised WU that he believed CHITRON-US' entire business operation had to be changed because CHITRON's practices and procedures violated U.S. law. During one meeting between this employee and WU, the employee told WU he believed CHITRON's exports to China violated U.S. laws. WU responded that the U.S. laws did not apply to CHITRON because it shipped to Hong Kong (or words to that effect).

78. In or about October 2007, after an employee confronted WU about Chitron's illegal export practices, WU responded by stating the following (or words to this effect): "I will lose 20% of my business" if procedures were implemented to comply with U.S. law; "I'm not afraid to go to jail. Are you?;" and "China had the right to modernize."

79. In or about October 2007, in describing how CHITRON would operate in light of allegedly new U.S. export restrictions, WU stated: "We need to continue to maintain our original contacts with China's war industry and defense technology units."

All in violation of 18 U.S.C. §371 and §2.

37

COUNTS 2-6:      (22 U.S.C. §§2778(b)(2) and 2778(c), 22 C.F.R. §§
                 121.1, 123.1, and 127.1(a)(1), and 18 U.S.C. §2 -
                 Unlawful Export of Defense Articles)

The Grand Jury further charges that:

The allegations contained in paragraphs 1-46 of the
Introductory Allegations are hereby re-alleged and incorporated
by reference as if fully set forth herein.

On or about the dates listed as to each count below, in the
District of Massachusetts and elsewhere, the defendants noted
below did knowingly and willfully export, and cause the export,
from the United States to Hong Kong, and to China, of defense
articles designated on the United States Munitions List,
as described more fully below in Counts 2 through 6, without the
required license or written authorization from the Department of
State having first been obtained for such exports.

| COUNT | DEFENDANTS | DATE OF EXPORT | DESCRIPTION OF EXPORT ITEMS |
|-------|------------|----------------|------------------------------|
| 2 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/24/04 | 3 M/A-Com Power Amplifiers, part number MAAPGM0038 |

38

| 3 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/24/04 | 5 M/A-Com Power Amplifiers, part number MAAPGM0034 |
| 4 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 6/16/06 | 10 M/A Com Phase Shifters, part number MAPCGM0003 |
| 5 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 6/23/06 | 10 M/A Com Phase Shifters, part number MAPCGM0002 |
| 6 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/17/07 | 6 Rad Hard Synchronous Rectifiers, part number IRHSNA57064D |

All in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a)(1), and Title 18, United

States Code, Section 2.

COUNTS 7-28:    (50 U.S.C. §1705, 15 C.F.R. §§736.2(b)(1),
                736.2(b)(10), 764.2, and 764.3(b)(2)(i), **Executive
                Order 13222, and 18 U.S.C. §2 - Unlawful Export of
                Commerce Controlled Goods)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-45 of the
Introductory Allegations are hereby re-alleged and incorporated
by reference as if fully set forth herein.

On or about the dates listed as to each count below, in the
District of Massachusetts and elsewhere, the defendants noted
below did knowingly and willfully export, and cause the export,
of electronic components and other commodities, as described more
fully below in Counts 7 to 28, from the United States to China
without having first obtained the required export license from
the Department of Commerce:

| COUNT | DEFENDANTS | DATE OF EXPORT | DESCRIPTION OF EXPORTED ITEMS |
|-------|-----------|----------------|-------------------------------|
| 7 | **ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED** | 5/8/04 | 60 Intersil Digital-to-Analog Converters, part number CA3338AD |

41

| 8 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 11/20/04 | 124 Lattice Semiconductors Programmable Array Logic Devices, part number 5962-8984102LA |
|---|---|---|---|
| 9 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 11/25/04 | 60 Lattice Semiconductors Programmable Array Logic Devices, part number 5962-8983903RA |
| 10 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 12/11/04 | 2876 Lattice Semiconductors Programmable Array Logic Devices, part number 5962-8983903RA |
| 11 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 3/5/05 | 28 M/A Com amplifiers, part number MAAPGM0021 |

| 12 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 7/16/05 | 70 Digital-to-Analog Converters, part number AD660SQ/883B |
| 13 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 9/17/05 | 2 Analog Devices Microcircuits, part number AD6645ASQ-80 |
| 14 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 11/12/05 | 2 Cypress Memory Microcircuits, part number 5962-8959820MZA |
| 15 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 2/24/06 | 4 Analog-to-Digital Converters, part number THS1408IPFB |

| 16 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 2/24/06 | 10 Analog-to-Digital Converters, part number AD574ATD |
| 17 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/7/06 | 111 Analog-to-Digital Converters, part number AD9433BSQ-125-ND |
| 18 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/14/06 | 20 Analog-to-Digital Converters, part number ADS8411IBPFBT |
| 19 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 5/26/06 | 15 Analog Devices Analog-to-Digital Converters, part number AD6645ASQ-105 |

| 20 | ZHEN ZHOU WU a/k/a ALEX WU, YUFENG WEI a/k/a ANNIE WEI, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 6/13/06 | 7 Analog Devices Digital-to-Analog Converters, part number AD565ATD |
| 21 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/6/07 | 10 Analog-to-Digital Converters, part number ADS1610IPAPT |
| 22 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/13/07 | 5 Analog-to-Digital Converters, part number AD9245BCP-80 |
| 23 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/24/07 | 20 Analog-to-Digital Converters, part number ADS5463IPFP |

| 24 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 4/24/07 | 20 Analog-to-Digital Converters, part number AD7760BSVZ |
|---|---|---|---|
| 25 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 5/1/07 | 25 Analog-to-Digital Converters, part number LTC2242IUP-12#PBF |
| 26 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 5/4/07 | 10 Analog-to-Digital Converters, part number THS1403IPFB |
| 27 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 5/15/07 | 10 Analog-to-Digital Converters, part number ADS1610IPAPT |

| 28 | ZHEN ZHOU WU a/k/a ALEX WU, BO LI a/k/a ERIC LEE, CHITRON ELECTRONICS, INC., and CHITRON ELECTRONICS COMPANY LIMITED a/k/a CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED | 6/1/07 | 3 National Semiconductor Analog-to-Digital Converters, part number ADC08D1500CIYB/NO PB |

All in violation of Title 50, United States Code, Section 1705, Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 736.2(b)(10), 764.2, and 764.3(b)(2)(i), Executive Order 13222, and Title 18, United States Code, Section 2.

COUNT 29:        (50 U.S.C. §1705, 15 C.F.R. §§736.2(b)(5), 764.2,
                 764.3(b)(2)(i), 744.1, and Supplement No. 4 to
                 Part 744, Executive Order 13222, and 18 U.S.C. §2
                 - Unlawful Export of Commerce Controlled Goods)

The Grand Jury further charges that:

    The allegations contained in paragraphs 1-45 of the

Introductory Allegations are hereby re-alleged and incorporated

by reference as if fully set forth herein.

    On or about March 31, 2006, in the District of Massachusetts

and elsewhere, the defendants,

                 ZHEN ZHOU WU a/k/a ALEX WU,
                 YUFENG WEI a/k/a ANNIE WEI,
                 CHITRON ELECTRONICS, INC., and
            CHITRON ELECTRONICS COMPANY LIMITED a/k/a
           CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a
           SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED,

did knowingly and willfully export, and cause the export, of

items subject to the Export Administration Regulations and having

a classification other than EAR99, that is, 2 Xilinx devices,

part number XC2V30004FG676C, classified under Export

Classification Control Number 3A001, from the United States to

Shanghai Academy of Space Flight Technology in China, which is on

the Entity List, without having first obtained a license from the

Department of Commerce.

    In violation of Title 50, United States Code, Section 1705,

Title 15, Code of Federal Regulations, Sections 736.2(b)(5),

764.2, 764.3(b)(2)(i), 744.1, and Supplement No. 4, Executive

Order 13222, and Title 18, United States Code, Section 2.

COUNT 30:      (50 U.S.C. §1705, 15 C.F.R. §§736.2(b)(5), 764.2, 764.3(b)(2)(i), 744.1, and Supplement No. 4 to Part 744, Executive Order 13222, and 18 U.S.C. §2 - Unlawful Export of Commerce Controlled Goods)

The Grand Jury further charges that:

The allegations contained in paragraphs 1-45 of the Introductory Allegations are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about April 14, 2006, in the District of Massachusetts and elsewhere, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,**
**YUFENG WEI a/k/a ANNIE WEI,**
**CHITRON ELECTRONICS, INC., and**
**CHITRON ELECTRONICS COMPANY LIMITED a/k/a**
**CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a**
**SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED,**

did knowingly and willfully export, and cause the export, of items subject to the Export Administration Regulations and having a classification other than EAR99, that is, 2 Xilinx devices, part number XCF32PVO48C, classified under Export Classification Control Number 3A991, from the United States to Shanghai Academy of Space Flight Technology in China, which is on the Entity List, without having first obtained a license from the Department of Commerce.

In violation of Title 50, United States Code, Section 1705, Title 15, Code of Federal Regulations, Sections 736.2(b)(5), 764.2, 764.3(b)(2)(i), 744.1, and Supplement No. 4, Executive Order 13222, and Title 18, United States Code, Section 2.

COUNT 31:        (18 U.S.C. §371 - Conspiracy)

The Grand Jury further charges that:

The allegations contained in paragraphs 1-45 of the
Introductory Allegations are hereby re-alleged and incorporated
by reference as if fully set forth herein.

From a date unknown to the Grand Jury, but at least from in
or before December 2004, and continuing thereafter until on or
about December 5, 2008, in the District of Massachusetts and
elsewhere,

ZHEN ZHOU WU a/k/a ALEX WU,
YUFENG WEI a/k/a ANNIE WEI, and
BO LI a/k/a ERIC LEE,

defendants herein, did willfully conspire, combine, confederate
and agree with each other and others known and unknown to the
Grand Jury to commit an offense against the United States, that
is, to knowingly and willfully cause false and misleading
Shipper's Export Declarations to be prepared, submitted, and
filed with the U.S. Department of Commerce in violation of the
International Emergency Economic Powers Act, 50 U.S.C. §1705,
Executive Order 13222, and 15 C.F.R. §764.2(g)(1)(ii) (the Export
Administration Regulations).

## MANNER AND MEANS

The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following during the dates of the alleged conspiracy:

1.  It was part of the conspiracy for the defendants to procure U.S. origin commodities using CHITRON-US, located in Waltham, Massachusetts. Upon receipt of the U.S. origin commodities, the defendants then caused those commodities to be shipped to China through Hong Kong.

2.  It was further part of the conspiracy that the defendants signed, caused the signing, approved, and caused the filing of false Shipper's Export Declarations, which misrepresented and concealed the identity of the ultimate consignee and country of ultimate destination.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and other co-conspirators, committed overt acts, including but not limited to the following:

3.  On numerous occasions, from in or about December 2004 through in or about October 2006, WEI gave instructions to employees of CHITRON-US to ship commodities to companies hired as freight forwarders in Hong Kong.

4.  On numerous occasions, from on or before December 2004 through in or about December 2005, WEI instructed agents of UPS to sign and file false and misleading Shipper's Export

51

Declarations with the U.S. Department of Commerce.

5.  Beginning in or about December 2005, WEI instructed at least
    one employee to falsely complete SEDs on behalf of CHITRON-
    US.  She instructed this employee to identify Hong Kong
    companies and CHITRON's Hong Kong office as the "ultimate
    consignee" on the SEDs when they were not in fact, nor did
    she at anytime material to this indictment consider them to
    be, the foreign party that was receiving the merchandise for
    the designated end-use.  WEI also instructed this employee
    to list the country of ultimate destination as Hong Kong
    when in fact the vast majority of CHITRON-US' customers were
    located in mainland China.

6.  In or about 2005, WU opened CHITRON's Hong Kong branch
    office for logistic reasons.  He set it up to act as a
    freight forwarder and receive shipments from CHITRON-US and
    re-ship the electronic components and other commodities to
    CHITRON-SHENZHEN.

7.  In or about February 2006, WEI signed false and misleading
    Shipper's Export Declarations.

8.  On or about March 30, 2007, WEI signed false and misleading
    Shipper's Export Declarations.

9.  On numerous occasions, from in or about December 2004
    through in or about October 2007, WEI prepared shipping
    invoices, which were provided to UPS, that indicated that
    the commodities being shipped by CHITRON-US did not require

a license when in fact many of those shipments contained items subject to U.S. Department of Commerce controls and required a license to export to China.

10. From in or about March 2007 through December 2008, LI signed, caused to be signed, caused to be filed, and approved the filing of, more than 100 SEDs that were false in that they misrepresented and concealed the identity of the ultimate consignee from the U.S. Department of Commerce.

All in violation of 18 U.S.C. §371 and §2.

Case 1:08-cr-10386-PBS Document 123 Filed 12/17/09 Page 54 of 61

**COUNT 32:** (18 U.S.C. §1001(a)(1) - Scheme to Falsify, Conceal, and Cover Up Material Facts; Aiding and Abetting, 18 U.S.C. §2)

The Grand Jury further charges that:

The allegations contained in paragraphs 1-45 of the Introductory Allegations are hereby re-alleged and incorporated by reference as if fully set forth herein.

From in or before December 2004 and continuing until on or about December 5, 2008, in the District of Massachusetts and elsewhere,

**ZHEN ZHOU WU a/k/a ALEX WU, and
YUFENG WEI a/k/a ANNIE WEI,**

defendants herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully falsify, conceal, and cover up by trick, scheme and device material facts from the U.S. Department of Commerce, which they had a duty to disclose, to wit: said defendants each signed, caused to be signed, approved, and caused to be filed, Shipper's Export Declarations that misrepresented and concealed the identities of the ultimate consignees and final end-users to which Chitron Electronics, Inc., had shipped commodities.

All in violation of 18 U.S.C. §1001(a)(1) and §2.

54

**COUNT 33:** **(18 U.S.C. §1001(a)(1) - Scheme to Falsify, Conceal, and Cover Up Material Facts; Aiding and Abetting, 18 U.S.C. §2)**

The Grand Jury charges that:

The allegations contained in paragraphs 1-45 of the Introductory Allegations are hereby re-alleged and incorporated by reference as if fully set forth herein.

From on or about March 25, 2007 and continuing until on or about December 5, 2008, in the District of Massachusetts and elsewhere,

### BO LI a/k/a ERIC LEE,

defendant herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully falsify, conceal, and cover up by trick, scheme and device material facts from the U.S. Department of Commerce, which he had a duty to disclose, to wit: said defendant signed, caused to be signed, approved, and caused to be filed, Shipper's Export Declarations that misrepresented and concealed the identities of the ultimate consignees and final end-users to which Chitron Electronics, Inc., had shipped commodities.

All in violation of 18 U.S.C. §1001(a)(1) and §2.

## COUNT 34:          (18 U.S.C. § 1546(a) - Use of Fraudulently
                      Obtained Permanent Resident Card)

The Grand Jury further charges that:

The allegations contained in paragraphs 1-45 of the
Introductory Allegations are hereby re-alleged and incorporated
by reference as if fully set forth herein.

On or about July 27, 2008, in the District of Massachusetts
and elsewhere, the defendant,

### YUFENG WEI a/k/a ANNIE WEI,

did knowingly utter, use, and possess a document prescribed by
statute and regulation for entry into and as evidence of
authorized stay in the United States, that is, a U.S. Permanent
Resident Card, by which the defendant entered the United States
knowing it to have been falsely made and procured by means of
false claims and statements, and to have been otherwise obtained
by fraud and unlawfully obtained; WEI did provide false
information as to material facts in the Application to obtain
said U.S. Permanent Resident Card (Form I-485) and in the
Biographic Information Form G-325A (that was submitted as part of
her Application for said U.S. Permanent Resident Card), both of
which she completed and signed on September 19, 2002, as follows:

In response to a question on the Form I-485 Application that
asked "Do you intend to engage in the U.S. in any activity
to violate or evade any law prohibiting the export from the
United States of goods, technology or sensitive
information?", the defendant responded "No."

As the defendant then and there well knew, these statements were

56

false in that she concealed facts that she had a legal duty to disclose.

> In response to a question in the Form G-325A (that was submitted as part of her I-485 Application for said U.S. Permanent Resident Card) that requested WEI's employment history for the prior five years, WEI provided periods of employment dating back to 1992 but knowingly concealed and omitted from her employment history that she worked in Massachusetts at Perfect Science and Technology from in or about August 1996 through in or about May 1998, when she was not legally authorized to work in the United States pursuant to the terms of her F-1 student visa.

As the defendant then and there well knew, these statements were false in that she concealed facts that she had a legal duty to disclose.

All in violation of Title 18, United States Code, Section 1546(a).

**CRIMINAL FORFEITURE ALLEGATIONS**
**18 U.S.C. §§981 and 982; 22 U.S.C. §401;**
**28 U.S.C. §2461; 19 U.S.C. §1595a**
**Criminal Forfeiture**

1.  Upon conviction of any offense alleged in Counts One

through Six, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,**
**YUFENG WEI a/k/a ANNIE WEI,**
**BO LI a/k/a ERIC LEE,**
**CHITRON ELECTRONICS, INC., and**
**CHITRON ELECTRONICS COMPANY LIMITED a/k/a**
**CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a**
**SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED,**

jointly and severally, shall forfeit to the United States:

a.  any property, real or personal, that constitutes,

or is derived from, proceeds traceable to the

commission of the offense, pursuant to 18 U.S.C.

§981(a)(1)(C) and 28 U.S.C. §2461(c);

b.  any arms, munitions of war or other articles

exported or intended to be exported or removed

from the United States in violation of law, and

any vessel, vehicle, or aircraft containing the

same or which has been or is being used in

exporting or attempting to export such arms or

munitions of war or other articles, pursuant to 22

U.S.C. §401 and 28 U.S.C. §2461(c); and

c.  all merchandise exported or sent from the United

States contrary to law, or the proceeds of value

thereof, and property used to facilitate the

58

exporting or sending of such merchandise, or the

receipt, purchase, transportation, concealment, or

sale of such merchandise, pursuant to 19 U.S.C.

§1595a(d).

2.   Upon conviction of any offense alleged in Count One or

in Counts Eight through Thirty-One, the defendants,

**ZHEN ZHOU WU a/k/a ALEX WU,**
**YUFENG WEI a/k/a ANNIE WEI,**
**BO LI a/k/a ERIC LEE,**
**CHITRON ELECTRONICS, INC., and**
**CHITRON ELECTRONICS COMPANY LIMITED a/k/a**
**CHI-CHUANG ELECTRONICS COMPANY LIMITED a/k/a**
**SHENZHEN CHITRON ELECTRONICS COMPANY LIMITED,**

jointly and severally, shall forfeit to the United States:

a.   any property, real or personal, that constitutes,

or is derived from, proceeds traceable to the

commission of the offense, pursuant to 18 U.S.C.

§981(a)(1)(C) and 28 U.S.C. §2461(c); and

b.   all merchandise exported or sent from the United

States contrary to law, or the proceeds of value

thereof, and property used to facilitate the

exporting or sending of such merchandise, or the

receipt, purchase, transportation, concealment, or

sale of such merchandise, pursuant to 19 U.S.C.

§1595a(d).

59

4. Upon conviction of the offense alleged in Count Thirty-Four, the defendant,

**YUFENG WEI a/k/a ANNIE WEI**

shall forfeit to the United States:

- a. any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense, pursuant to 18 U.S.C. §982(a)(6)(A)(I); and
- b. any property, real or personal, that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; or any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offense, pursuant to 18 U.S.C. §982(a)(6)(A)(ii).

5. If any of the forfeitable property described in paragraphs 1 through 4 above, as a result of any act or omission of the defendants:

- a. cannot be located upon the exercise of due diligence;
- b. has been transferred or sold to, or deposited with, a third party;
- c. has been placed beyond the jurisdiction of the Court;
- d. has been substantially diminished in value; or

      e.    has been commingled with other property which

             cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28,

United States Code, Section 2461(c) and Title 18, United States

Code, Section 982(b), incorporating  Title 21, United States

Code, Section 853(p), to seek forfeiture of any other property of

the defendants up to the value of the property described in

subparagraphs (a) through (e) of this paragraph.

    All pursuant to Title 18, United States Code, Sections 981

and 982, Title 22, United States Code, Section 401, Title 28,

United States Code, Section 2461, and Title 19, United States

Code, Section 1595a.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

B. STEPHANIE SIEGMANN
JOHN A. CAPIN
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS, Boston, MA     December 17, 2009

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk,
12/17/09 @
12:43pm

61